W. C. MILLER,

*Plaintiff*

vs.

THE BOARD OF THE COUNTY COMMISSIONERS
OF THE COUNTY OF NATRONA,

*Defendant*

(No. 2880; March 24th, 1959; 337 Pac. (2d) 262)

504

For the plaintiff the matter was submitted on the brief of John J. McIntyre and Harden & Harden of Casper, Wyoming.

There was no appearance for defendant.

Thomas O. Miller, Attorney General, Sterling A. Case, Assistant Attorney General, and Glenn A. Williams, Assistant Attorney General of Cheyenne, Wyoming, appearing as amicus curiae, submitted the matter upon their brief.

Heard before Blume, C. J., and Parker and Harnsberger, JJ.

508

510

OPINION

Mr. Justice Parker delivered the opinion of the court.

The taxation statutes passed by the legislative assembly of the Territory of Wyoming provided for some exemptions[1] which subsequent legislatures have broadened to include certain property of honorably discharged veterans. In 1917 the legislature extended this exemption to include property to the amount of $2,000 in assessed valuation of honorably discharged veterans of the Civil War. In 1921 this was extended to veterans of the Spanish-American War and World War I. Subsequent legislation has included veterans of other wars. The legislature by c. 175, S. L. of Wyo-

---

[1] Approved December 10, 1869 (c. 109, § 2, The Compiled Laws of Wyoming, 1876).

ming, 1955, sought to limit the tax benefits both as to individuals participating and the maximum amount to be allowed. The instant appeal, growing out of these limitations, is presented without pleadings, the trial court certifying constitutional questions raised by the following agreed facts:

W. C. Miller, a bona fide resident of Wyoming and an honorably discharged veteran of World War I, owned real property in Casper on which was levied 1956 taxes of $256.97. He filed for veterans' tax exemption but having previously received a tax benefit of more than $800 under the provisions of § 32-102, W.C.S.1945, he was denied exemption, the allowance of which would have reduced his taxes to $152.83 ($104.14 less than that demanded). He paid the full amount and brought suit for the $104.14, urging that c. 175 was unconstitutional. The portions of the statute said by him to be germane are:

"Section 1. Paragraph Fifth, Section 32-102, Wyoming Compiled Statutes, 1945, as amended by Sections 1 and 2, Chapter 17, Session Laws of Wyoming, Special Session, 1946, as amended and re-enacted by Section 1, Chapter 129, Session Laws of Wyoming, 1951, as amended and re-enacted by Section 1, Chapter 151, Session Laws of Wyoming, 1953, be amended and re-enacted to read as follows: [The following described property is hereby exempted from taxation:]

"Fifth. Subject to the limitations provided herein and the requirements for proof of entitlement herein the property of the following persons to the amount of $2,000 in assessed valuation during any year:

"(a). Each honorably discharged veteran including nurses, of the Civil War, Indian Wars, the Spanish American War, the Filipino Insurrection, the Boxer Rebellion, the Puerto Rico Campaign and the First

World War, who was a resident of Wyoming on or before March 1, 1955;

    *     *     *     *     *

"(d) The widow, during her widowhood, of any person described in sub-sections (a), (b), or (c) above; and the widow, during her widowhood, of those members of such military forces who died while serving honorably therein.

"The tax exemption provided by this subsection is declared to be a bonus for service in the military forces of the United States, the total tax benefit shall not exceed Eight Hundred ($800.00) Dollars for any war emergency herein enumerated, from which the claimant was last honorably discharged, and the following limitations shall apply to all claimants:

    *     *     *     *     *

"(3.) That the claimant, since the date of his last honorable discharge from the military forces of the United States has received a tax benefit of less than $800.00, under the provisions of Section 32-102, Fifth, Wyoming Compiled Statutes of 1945, and the amendments thereto adopted as Chapter 17, Session Laws 1946, (Spec. Sess.), Chapter 129, Session Laws 1951, Chapter 151, Session Laws 1953, and this Act.

"(4.) The total amount of the tax benefit which the claimant has been informed and believes he has received since the date of his last honorable discharge from the military forces of the United States. Provided, however, that the tax benefit limitation shall not apply to widows of veterans, during their widowhood, nor to the veterans and widows of veterans during their widowhood, of the Spanish American War."

The trial court under the provisions of c. 3, art. 55, W.C.S.1945, certified as difficult and important constitutional questions the following:

Question 1: Do the provisions of c. 175, S. L. of Wyoming, 1955, violate Art. 1, § 3, Constitution of Wyoming, reading:

"Since equality in the enjoyment of natural and civil rights is only made sure through political equality, the laws of this state affecting the political rights and privileges of its citizens shall be without distinction of race, color, sex, or any circumstance or condition whatsoever other than individual incompetency, or unworthiness duly ascertained by a court of competent jurisdiction."

Question 2: Do the provisions of c. 175, violate Art. 1, § 28, reading:

"No tax shall be imposed without the consent of the people or their authorized representatives. All taxation shall be equal and uniform."

Question 3: Do the provisions of c. 175 violate Art. 1, § 34, reading:

"All laws of a general nature shall have a uniform operation."

Question 4: Do the provisions of c. 175 violate Art. 1, § 35, reading:

"No ex post facto law, nor any law impairing the obligation of contracts, shall ever be made."

Question 5: Do the provisions of c. 175 violate Art. 3, § 20, reading:

"No law shall be passed except by bill, and no bill

shall be so altered or amended on its passage through either house as to change its original purpose."

Question 6: Do the provisions of c. 175 violate Art. 3, § 24, reading:

"No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

Question 7: Do the provisions of c. 175 violate Art. 3, § 27, insofar as it relates to (1) the granting to any association or individual of any special or exclusive privilege or immunity; (2) the relinquishing or extinguishing of the indebtedness, liabilities or obligation of any person to the State or to any municipal corporation; and (3) the exempting of property from taxation. As relevant to this question, § 27 reads:

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * for the assessment or collection of taxes; * * * refunding money paid into the state treasury, relinquishing or extinguishing, in whole or part, the indebtedness, liabilities or obligation of any corporation or person to this state or to any municipal corporation therein; exempting property from taxation * * *."

Question 8: Do the provisions of c. 175 violate Art. 3, § 36, reading:

"No appropriation shall be made for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the ab-

solute control of the state, nor to any denominational or sectarian institution or association."

Question 9: Do the provisions of c. 175 violate Art. 15, § 11, reading:

"All property, except as in this constitution otherwise provided, shall be uniformly assessed for taxation, and the legislature shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal."

Question 10: Do the provisions of c. 175 violate Art. 15, § 12, reading:

"The property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, public cemeteries, shall be exempt from taxation, and such other property as the legislature may by general law provide."

Question 11: Do the provisions of c. 175 violate Art. 16, § 6, reading:

"Neither the state nor any county, city, township, town, school district, or any other political sub-division, shall loan or give its credit or make donations to or in aid of any individual, association or corporation, except for necessary support of the poor, nor subscribe to or become the owner of the capital stock of any association or corporation. The state shall not engage in any work of internal improvement unless authorized by a two-thirds vote of the people."

Plaintiff points out distinctions made by the statute, urging in effect the following unwarranted discriminations:

(a) Veterans of the first World War and prior wars

who became residents of Wyoming prior to March 1, 1955, are entitled to the benefits of the Act but those coming to the State after that date are not.

(b) The $800 limitation does not apply to Spanish-American War veterans or to widows of all veterans.

(c) The statute benefits only those veterans who are property owners.

His argument is addressed to four different bases of the statute's alleged unconstitutionality. (He abandons a fifth group of three questions.) These should perhaps be here listed although we perceive no advantage in adhering to such grouping in our consideration of the case.

## 1

Plaintiff discusses the trial court's questions one, three, seven, nine, and ten, supra, referring respectively to Art. 1, §§ 3 and 34; Art. 3, § 27; and Art. 15, §§ 11 and 12. In so doing, he urges the class distinctions in the statute to be unreasonable and improper, thereby violating the constitution in its provisions that the rights of all people shall be equal, taxation shall be equal and uniform, all laws shall have uniform operation, there shall be uniformity of assessment, and no special statutes shall be passed.

## II

He comments upon question four, maintaining the effect of the law to be retroactive, thereby destroying the obligation of contract and interfering with vested rights, in conflict with Art. 1, § 35, which prohibits ex post facto laws.

## III

As to question six, he insists that the statute contains a reference to matter not set forth in the title, thereby being in conflict with Art. 3, § 24.

## IV

He analyzes question eleven, contending that the term "bonus" necessarily implies the exemption to be a gift or donation and therefore the questioned statute is in violation of Art. 16, § 6, which prohibits the State from making donations to any individual.

## V

He waives argument on questions two, five, and eight.

At the beginning of any consideration of this case, we must bear in mind the history of the statute which has been attacked and in general the holdings of this court on the subject.

The 1917 Act (§ 1, c. 87, S. L. of Wyoming, 1917) which granted the exemption to Civil War veterans was not questioned, but the 1921 statute (§ 1, c. 50, S. L. of Wyoming, 1921) which allowed exemptions to Spanish-American War and World War I veterans was put in issue in the case of State ex rel. Board of Com'rs of Goshen County v. Snyder, 29 Wyo. 199, 212 P. 771. There this court held the Act to be constitutional, stating that it was a general rather than a special law, intended to promote the public welfare, that it made a reasonable classification in which there was a substantial distinction as to subject matter, that the law was not a bonus law (although the case

did not turn on this point), and that the exemption did not constitute a gift or donation to an individual. In the Snyder case the plaintiff did not challenge all of the constitutional sections which are questioned here, but the basic criticism was then, as now, that the statute was special rather than general. The Snyder holding was followed in Harkin v. Board of Com'rs of Niobrara County, 30 Wyo. 455, 222 P. 35, and has become the settled law of the State. Accordingly, plaintiff in the present case to be successful in his main contention of special legislation must show that the 1955 law was so *different* from the 1921 law as to be governed by *different* principles. Let us see whether or not this is true.

S. L. of Wyoming, 1931, and 1933, added other veterans entitled to benefits but did not change the general tenor of the statute. The 1945 law (§§ 1 and 2, c. 140, S. L. of Wyoming, 1945) entitled veterans of the second World War to the tax exemption but required that they must have been bona fide Wyoming *residents at the time of their entry into the military service*. There were amendments of the veterans' tax exemption law in 1946, 1951, and 1953, Laws 1946, Sp. Sess., c. 17, Laws 1951, c. 129, Laws 1953, c. 151 which do not seem to warrant discussion here since insofar as they are relevant to the instant case they are embodied in S. L. of Wyoming, 1955. Suffice to say that the 1955 statute here questioned, although differing in numerous respects from the 1921 law, contains the following provisions which may have some bearing on the present controversy: (a) It includes veterans of later wars if residents of Wyoming at the time of entry into the service. (b) It precludes veterans of World War I and prior wars from benefits unless they were residents of Wyoming "on or before March 1, 1955." (c) It establishes an $800 maximum tax benefit to

any veteran (subject to the noted exceptions). We look then to the changes in the 1955 statute to ascertain whether or not they would reasonably seem to necessitate a revision of the Snyder opinion.

The 1921 law required no preservice residence for a veteran's tax exemption, while the later law made residence in Wyoming prior to service a prerequisite. The earlier law permitted veterans of World War I and prior wars an exemption at such time as they became residents and provided the required information, while the later law cut off the right to exemptions for such veterans unless they were residents by March 1, 1955 (about the time the Act was passed). The earlier statute established no limitation of amount of tax benefits to be received by any veteran, while the later statute sets an $800 maximum. Although the intent of the legislature in the later enactments effecting these changes has not been pleaded or argued, we think it is important in the determination of this case and is fairly deducible from the context of the legislation.

At the time of the earlier tax-exemption statutes, the legislature among other things was interested in colonization in the State and desired to give some incentive therefor, while the later legislature being less interested in that phase of the problem was seeking a limitation as to the ultimate liability which would be assumed by the State in permitting the continued exemptions. To that end they provided a maximum as to total amount allowable and a cut-off date as to residence which would tend to limit the number of veterans who might participate. Inasmuch as a requirement of preservice residence was listed for veterans of the later wars, it became from a practical standpoint unnecessary to set up any other residence

limitation for them. In order to circumscribe the number of other veterans who might partake of the exemption, it was essential to create a dividing line between those who might be eligible and those who might not. The date of residency which would allow the exemption was a discretionary decision; but inasmuch as it coincided with the date of the passage of the law it would seem to be reasonable, which brings to mind two quotations made by this court in State ex rel. Board of Com'rs of Goshen County v. Snyder, supra at 212 P. 779, approved by Harkin v. Board of Com'rs of Niobrara County, supra:

" 'The right to make exemptions is involved in the right to select the subjects of taxation and apportion the public burdens among them, and must consequently be understood to exist in the lawmaking power, wherever it has not in terms been taken away.' Cooley on Taxation (2d Ed.) 200; In re Assessment of First N. Bank, 58 Okl. 508, 160 Pac. 469, L.R.A. 1917B, 294.

        \*      \*      \*      \*      \*

" '\* \* \* The state governments possess all governmental power not denied to them by the Constitution, and in the absence of a prohibition expressed or necessarily implied they may take all reasonable measures for the promotion of the general welfare.' Wheeler v. Weightman, 96 Kan. 50, 149 Pac. 977, L.R.A. 1916A, 846."

From this preliminary analysis the statute in question would appear to be reasonable legislation and not violative of the constitutional provisions.

We analyze then the authorities which plaintiff has presented. His quotation of Public Service Commission of Wyoming v. Grimshaw, 49 Wyo. 158, 53 P.2d 1, 10, 109 A.L.R. 534:

"'* * * it [the constitutional provision that all laws of a general nature shall have a uniform operation] 'is held to be satisfied by a statute "applying uniformly within a class of persons based on a reasonable distinction, or objects of a reasonable class, and operating the same on all parts of the state under the same circumstances." 36 Cyc. 992.' * * *'"

is a correct statement of the law but is too general to be of very great assistance here.

His quotation from State ex rel. Board of Com'rs of Goshen County v. Snyder, supra at 212 P. 775, which in turn quoted a portion of Standard Cattle Co. v. Baird, 8 Wyo. 144, 56 P. 598, is likewise general and as we interpret it of little help in substantiating plaintiff's position:

" 'The characteristics which serve as a basis for classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction having reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation, and the objects or places excluded. The marks of distinction on which the classification is founded must be such in the nature of things as will, in some reasonable degree, at least, account for or justify the restriction of the legislation.'

"And the court accepted also the statement of the law on the subject in another cited case, to the effect that every law is special which does not embrace every class of objects or persons within the reach of statutory law, 'with the single exception that the Legislature may exclude from the provisions of a statute such classes of objects or persons as are not similarly situated with those included therein, in respect to the nature of the legislation.' "

He next discusses State v. Miksicek, 225 Mo. 561, 125 S.W. 507, 511, for the principle that:

"\* \* \* 'The Legislature may legislate in regard to a class of persons, but they cannot take what may be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the orginal unit as two classes, and enact different rules for the government of each.\* \* \* ' [State v. Julow, 129 Mo. 163, 31 S.W. 781, 783, 29 L.R.A. 257, 50 Am.St.Rep. 443.] a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is a special.' [State v. Walsh, 136 Mo. 400, 37 S.W. 1112, 1113, 35 L.R.A. 231.] \* \* \*"

On its face this statement might seem applicable to the instant case but analysis of the facts in the Miksicek case discloses that the court is there discussing a conviction under a criminal statute which provided a work period for bakeries dealing in certain pastry products. That opinion points out the impropriety of passing a law which accords certain treatment to biscuit, bread, and cake bakeries but other treatment to pie, pastry, and cracker bakeries, saying:

" '\* \* \* This would be mere arbitrary classification without any basis of reason on which to rest \* \* \*.' [State v. Julow, 129 Mo. 163, 31 S.W. 781, 783, 29 L.R.A. 257, 50 Am.St.Rep. 443.]"

The Miksicek case is far removed from the subject matter of the issue at bar; and we doubt if it is of assistance on any point except that it indicates the legislature's distinction there to be arbitrary, without in any wise being convincing that the present distinction as to veterans is likewise arbitrary.

Plaintiff refers to In re Day, 181 Ill. 73, 54 N.E. 646, 647, which deals with an Act establishing certain rules governing admission to practice law. Applicants who had begun study before a certain time were covered by one set of rules and those who began study later

were governed by another set of rules. The court there said:

"* * * There must be some difference which furnishes a reasonable basis for different legislation as to the different classes, and not a purely arbitrary one, having no just relation to the subject of the legislation.* * *"

Here again our attention is called to a situation where a court has said that in order to justify different legislation for different classes there must be a reasonable rather than an unreasonable basis of distinction. There seems little comparison between the Day case and the one at bar.

Plaintiff quotes State v. Glidden Co., 228 N.C. 664, 46 S.E.2d 860, 862, a case dealing with a statute which made it unlawful to discharge poisonous substances in state water but excluded from the provisions thereof corporations chartered before a certain date. The portion relied upon is:

"Applying these principles, we are of the opinion that the date line running through the statute has no reasonable relation to the purpose of the law, only serving to mechanically split into two groups persons in like situation with regard to the subject matter dealt with but in sharply contrasting positions as to the incidence and effect of the law; and that the attempted classification is not based upon a justifiable distinction."

Again, our attention has been directed to the question that a difference in treatment of two groups of persons must be based *upon a justifiable distinction* which is another way of saying that the difference in treatment must have had a reasonable basis. To say that the Glidden case is analogous to the situation at bar would be a long step.

The case of State v. Le Barron, 24 Wyo. 519, 162 P. 265, 266, 267, Ann.Cas., 1918D 998, is quoted as authority for plaintiff's position here in the statement:

"* * * It has also been held that:

" 'The Legislature cannot take what might be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and thereupon enact different rules for the government of each.' 6 R.C.L. § 375; State v. Julow, 129 Mo. 163, 31 S.W. 781, 29 L.R.A. 257, 50 Am.St.Rep. 443; State v. Miksicek, 225 Mo. 561, 125 S.W. 507, 135 Am.St.Rep. 597 * * *."

The Le Barron case dealt with a statute limiting the hours for female labor in various industries but excluding from the provisions telephone offices or exchanges employing three females or less and hotels and restaurants operated by railroad companies. This court made clear that the exception of employees of hotels and restaurants operated by railroad companies was unconstitutional because the distinction was arbitrary, bypassing the situation regarding telephone company employees. The concurring opinion indicated clearly that insofar as the excepted telephone offices or exchanges were concerned the law was constitutional. The opinions in this case again emphasize the fact that a law which treats persons in one class or a subclass differently from other persons is unconstitutional as special legislation if the distinction is unreasonable but is constitutional if the distinction is reasonable.

Plaintiff reverts to the Snyder case, quoting with emphasis the fact that there must underlie the action of the legislature some principle of public policy which would support a presumption of public interest if the law is to be held constitutional. He urges that there

is no foundation for the distinction between veterans of World War I and prior wars who came to Wyoming before March 1, 1955, and those who came after that time. As we previously mentioned, we think there was a reasonable basis for the distinction, but in any event plaintiff admittedly has been in Wyoming during the entire period, is not affected by the limiting date of March 1, 1955, and may not be heard to complain as to the constitutionality of the statute on this ground. See McKinney v. State, 3 Wyo. 719, 30 P. 293, 16 L.R.A. 710, and other cases listed in 2 West's Wyoming Digest, 1956, Constitutional Law, Keynumber 42. See also 16 C.J.S. Constitutional Law § 88. He says the legislature acted arbitrarily and without foundation in excepting from the $800 limitation the veterans of the Spanish-American War and the widows of all veterans, and he asks rhetorically whether or not these persons are more deserving of the State's gratitude than any other member of the veteran class. Perhaps the court might take judicial notice of the fact that Spanish-American War veterans are a small group whose life expectancy is short and whose qualification for gainful employment is slight and of the further fact that in our civilization widows have long been accorded special consideration. Even without so doing, we would hesitate to say on the strength of the arguments presented that the distinctions of the legislature in this regard are without foundation and unreasonable.

Plaintiff also quotes the Snyder case in the portion which indicates that the 1921 statute was not a bonus law. We think this is not material to a determination of the present case. Now as then the law must stand or fall upon a consideration of its character as a tax-exemption statute. We there held it to have been intended to serve a public purpose and among other

things to show the gratitude of the people for services rendered by the veteran. The fact that the tax exemption has been by the legislature declared to be a bonus does not of itself invalidate the statute.

It is also said by plaintiff that "Considering the statute as a bonus statute it arbitrarily creates two classes of veterans, namely, those who own property who are entitled to the bonus and those who do not own property who are not entitled to the bonus." He, a property owner, is thus complaining that veterans who are not property owners are deprived of an exemption. As previously indicated, he will not be allowed to charge unconstitutionality unless he himself be injured by the alleged discrimination. Even so, the complaint is more apparent than real since the exemption applies to all property which includes automobiles and personalty so that from a practical standpoint perhaps most veterans are property owners. Moreover, the legislature might well have intended to provide an incentive to property ownership and resultant sharing of the burdens of government by all the persons to be benefited.

State v. Whitcom, 122 Wis. 110, 99 N.W. 468, 472, a criminal appeal from a conviction of violation of a statute requiring a license for peddlers, is quoted by plaintiff:

"* * * In considering the exemption of partially disabled veterans of the Civil War, a quite unanswerable query arises why, whether for purposes of taxation or police, they should be exempt any more than equally disabled veterans of other wars; why a victim of Spanish bullets in 1898, or of a Philippine wound in 1900, is any more dangerous as a peddler, or less liable to become a public charge, than a similar victim of Confederate assault in 1864; or why the former is any less entitled to the gratitude and favor of the

public, if that consideration were at all germane to either purpose of this law. * * *"

The opinion goes on to say that the statute does not make legitimate, distinguishable classification. As we have already indicated, we find the classification under the presently questioned statute to have been reasonable.

Summarizing plaintiff's authorities, we find that reliance is placed either upon general statements or upon cases in which the analogy is not close to the facts in the present litigation. The settled law in this jurisdiction was well expressed in State ex rel. Wyckoff v. Ross, 31 Wyo. 500, 228 P. 636, 640, wherein the court said:

"We are also asked whether said section * * * violates section 27 of article 3 of the state Constitution, which provides that the Legislature shall not pass local or special laws in certain enumerated cases, and that 'in all other cases where a general law can be made applicable no special laws shall be enacted.'

"* * * The Constitution does not prevent a reasonable classification of the objects of legislation. The question in each case is whether the classification is reasonable, in view of the object sought to be accomplished by the Legislature.* * *"

See also Unemployment Compensation Commission v. Renner, 59 Wyo. 437, 143 P.2d 181; 12 Am.Jur. Constitutional Law § 541; 50 Am.Jur. Statutes § 7; 6 Sixth Decennial Digest, Constitutional Law, Keynumber 208 (1).

All things considered, we have no basis for saying that either the objective or the result of the legislature in the 1955 Act was arbitrary and unreasonable. In Burton v. School Dist. No. 19, 47 Wyo. 462, 38 P.2d 610, 612, we said, "The duty to show an act to be in

contravention of the Constitution is upon him who asserts that to be true." This means that the person contesting the constitutionality of a statute must do more than make bald assertions of what he thinks is discriminatory. We think plaintiff has failed to show that the statute is unconstitutional. See also State v. Sherman, 18 Wyo. 169, 105 P. 299, 300, 27 L.R.A., N.S., 898, Ann.Cas. 1912C, 819, which in discussing classification of the legislature as to taxation said:

"* * * it cannot at all times be easy to determine what is reasonable or unreasonable in the matter of classification. The rule applies that all reasonable doubts are to be resolved in favor of the validity of the statute, and that the Legislature is presumed to have acted upon a knowledge of the facts, and to have had in view the promotion of the general welfare of the people as a whole; and hence the classification and discrimination involved therein must clearly appear to be unreasonable, and therefore arbitrary, in order to justify the court in declaring an act assailed on that ground to be void.* * *"

On a similar subject, see the statement in Madden v. Commonwealth of Kentucky, 309 U.S. 83, 88, 60 Sup. Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383, "The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."

Plaintiff also urges that the legislation is retroactive in effect, but he fails to support his charge. Moreover, his conclusion is based upon an erroneous assumption, i.e., the exemption is a *vested right*. If an exemption is not based upon a legal consideration but is given as a mere gratuity, it is of course revocable at any time. See 84 C.J.S. Taxation § § 215, 238; 51 Am.Jur. Taxation § 536. And see Annotation, 173 A.L.R. 15, 45, 127.

Plaintiff argues under question six that since the legislature failed to mention the subject of bonuses in the title the statute is invalid because it admittedly deals with the subject of bonuses. No cases are submitted, and we may not therefore give any weight to the argument, for as we have often held: Answers to constitutional questions will be limited to those which have been specifically phrased and fully argued. Salt Creek Transp. Co. v. Public Service Commission of Wyoming, 37 Wyo. 488, 263 P. 621.

Under question eleven it is urged that the legislature expressly declared the statute to be a bonus law and therefore that it creates gifts and donations in violation of Art. 16, § 6, of the constitution. This point was fully determined in the Snyder case, supra, when the court said at 212 P. 777, "A lawful exemption from taxation cannot, we think, be regarded as a gift or donation to or in aid of the individual, association, or corporation in whose favor the exemption is declared." We there after a full consideration of various aspects of the matter before us indicated our approval of the legislature's Act in attempting to promote the public welfare by expressing gratitude to persons who had served the Nation in time of war. Although the situation has changed from that time to this and there has been an evolution of the veterans' tax-exemption law, we think the changes have not been such as to alter the basic concept upon which the earlier pronouncement was made.

Accordingly we answer the questions submitted and argued by saying that the provisions of c. 175, S. L. of Wyoming, 1955, do not violate Art. 1, §§ 3, 34, and 35; Art. 3, §§ 24 and 27; Art. 15, §§ 11 and 12; or Art. 16, § 6, of the Wyoming constitution.