The BOARD OF TRUSTEES OF SCHOOL DISTRICT NO. 3, IN the COUNTY OF NATRONA and State of Wyoming, et al., Appellants (Petitioners below),

v.

The DISTRICT BOUNDARY BOARD OF NATRONA COUNTY, Wyoming and the State Committee Established by Organization Law of 1969, Appellees (Respondents below).

No. 4038.

Supreme Court of Wyoming.

Oct. 7, 1971.

Supplemental Opinion Nov. 12, 1971.

See 489 P.2d 1393.

Ernest Wilkerson, Casper, for appellants.

John Burk, County Atty., W. T. Schwartz and Robert H. McCrary, Casper, for District Boundary Board of Natrona County, Wyoming, and Donald L. Painter, Special Asst. Atty. Gen., Cheyenne, for State Committee Established, by Organization Law of 1969, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

The District Boundary Board of Natrona County made a decision that all of the school districts in Natrona County should be reorganized into a countywide unified school district. The State Committee for education approved the action of the District Boundary Board and purported to make such action final. Petitioners filed for review by the district court in Laramie County and it upheld actions of the Boundary Board and State Committee. Petitioners have appealed.

We consider first the power of the District Boundary Board to reorganize the county into a unified school district, and whether its decision in that regard is final and irreversible.

We very definitely held in Elementary School Districts 2, 3, and 10 v. District Boundary Board of Campbell County, Wyo., 454 P.2d 237 (May 9, 1969), that a county school boundary board had authority to consolidate all school districts of a county into a new countywide district. However, the decision was predicated on the language of Ch. 111, S.L. of Wyoming, 1961, which was applicable at that time.

This statute provided, the district boundary board "may at any time consolidate any such districts or portion of districts, when, in the opinion of such board such changes, alterations or consolidations may be justified by existing circumstances and conditions * * *." In a footnote on page 238, we said it should be noted that subsequent to the appeal under consideration at that time all statutory references relating to the organization and reorganization of school districts had been repealed by the Wyoming Education Code of 1969.

When it comes to creating a countywide unified school district, the duties and powers of a district boundary board are noticeably more restricted and limited under the Wyoming Education Code of 1969 than they were under the 1961 law. Section 21.1-140, W.S.1957, 1971 Cum.Supp., now provides any district boundary board may submit in writing to the state committee a proposal which would:

"(a) Alter and change the boundaries of any school district of any kind; or

"(b) Reorganize any such district or portions of districts; or

"(c) Combine any school district or portion thereof having less than eight (8) pupils with any adjoining school district or districts * * *."

█ It is noticeable from the foregoing that the boundary board merely proposes changes in boundaries. It does not actually effect changes. Moreover, there is no language which authorizes the board to make recommendations for a *consolidation* of all school districts into a single unified district, unless all of the smaller districts which are *combined* with a larger one have less than eight pupils. Several of the districts which the boundary board in this instance has proposed to combine with District 2 have more than eight pupils.

According to the language of § 21.1-140, the boundary board can propose to alter or change the boundaries of any school district (singular); it may propose to reorganize any such district (singular) or portions of districts; and it may propose to combine any such district (singular) or portion ‚thereof, when such district or portion has less than eight pupils, with an "adjoining" school district or districts.

Some of the districts here involved do not adjoin District 2. This might raise a question of whether it is sufficient for a district to adjoin some other district involved in the proposed unification. However, we need not answer that question. Actually, we need not be overtechnical about whether a district boundary board can propose a consolidation of all districts in a countywide unified district.

Chapter 6 of the Wyoming Education Code deals with the subject of SCHOOL DISTRICT ORGANIZATION. Chapter 7 deals with the subject of DISTRICT BOUNDARY BOARD. Section 21.1-142, W.S.1957, 1971 Cum.Supp., a part of the District Boundary Board chapter, specifies that the state committee, in approving or rejecting a proposal of the boundary board, shall consider the effect of the proposal upon the purposes of the Wyoming School District Organization Law of 1969. Also, the section states no proposal shall be approved if in the opinion of the state committee it would hamper efforts toward school district organization under the law.

█ We construe this section to mean efforts of the county committee, which is defined as the county planning committee *for the organization of school districts,*[1] must have precedence over proposals of the district boundary board on matters of school district organization. In the case we are now concerned with, it seems rather clear that the proposal of the district boundary board and the purported approval thereof by the state committee has hampered efforts of the county committee in its proper field (as distinguished from the proper field of the boundary board), in the efforts of the county planning committee to accomplish school district organization in Natrona County.

1. See § 21.1–107(d), W.S.1957, 1971 Cum.Supp.

Section 21.1–112(g), W.S.1957, 1971 Cum.Supp., a part of the school district organization law, makes it clear that when a plan of the county committee is rejected, the county committee may resubmit a modified plan "as often as necessary." The language is clear and unambiguous. It can only mean, no matter if a previous plan (or plans) of the county committee has been rejected, that committee can resubmit a modified plan as often as necessary, as long as the county committee continues in existence.

It is important to observe that § 21.1–112(g) requires the state committee, when it rejects a plan of the county committee, to state reasons for rejection *and* "recommendations for making the plan acceptable." In this instance, the state committee stated as its reason for rejection of the county committee's plan that it failed to adequately consider school population, general population and ecology, as required by Chapter 6. However, we fail to find wherein or how the state committee met its statutory duty of setting forth recommendations for making the plan acceptable.

If the state committee had properly performed this duty, by stating what modifications in the county plan would be necessary to meet the minimum criteria requirements of Chapter 6, it is possible the county committee could have and would have made proper modifications of its plan.

In arguments made to us, it is indicated the state committee objected to the county committee plan because it failed to establish proper trustee residence areas. In that regard, the statutory requirement is in general and vague language. It merely requires that "consideration shall be given to school population, general population, and ecology."[2] If the state committee considers it to be the prerogative of that committee to fix guidelines and minimum requirements for the establishment of trustee residence areas, it should have informed the county committee of such guidelines and minimum requirements.

It is important to bear in mind that the state committee can reject a county committee plan *only* if it fails to comply with the provisions of Chapter 6, the school district organization chapter.[3] Therefore, if and when a county committee plan or modified plan complies with the provisions of Chapter 6, the state committee has no right or power to reject such plan or modified plan.

Section 21.1–113, W.S.1957, 1971 Cum.Supp., expresses the idea that if an approved plan has not been filed by December 1, 1971, the state committee is authorized to reorganize the territory into a unified district. This section is a part of the school district organization chapter. It has to mean, if an approved plan of the county planning committee has not been filed by December 1, 1971, then the state committee can reorganize.

Thus, regardless of whether the state committee would devise its own reorganization plan or take one from some other agency (such as the district boundary board), prior to December 1, 1971, its action would be premature and ineffective.

### Aggrieved Parties

Respondents argued to the district court that petitioners do not have standing to maintain this action. We find nothing in the record, however, to indicate the district court passed upon that matter. Respondents, as appellees, seek to urge on us the same argument.

Section 21.1–150, W.S.1957, 1971 Cum.Supp., provides that any school district or elector or taxpayer of a school district, "if aggrieved" by any action of the district boundary board, may institute proceedings for judicial review. Also, § 9–276.32(a), W.S.1957, 1971 Cum.Supp., of the Administrative Procedure Act, clearly

---

2. See § 21.1–109(d), W.S.1957, 1971 Cum. Supp.

3. Section 21.1–112(g), W.S.1957, 1971 Cum.Supp.

affords a right of judicial review of agency action to "any person aggrieved or adversely affected" by a final decision of an agency.

■ Numerous cases could be cited where school districts, or the board of trustees of such districts, have challenged in the courts an action of a district boundary board. Suffice it to say, appellees have cited no case where Wyoming courts have denied the right of review in a matter such as is here involved. We have often said administrative officers and boards will not be permitted to act in an arbitrary, capricious or fraudulent manner, and courts will restrain such administrative agencies from becoming despotic.[4]

■ This can only mean, regardless of precise statutory authority, courts must remain open with inherent power to review administrative action when it is alleged to be without authority or arbitrary.

■ There is no merit in the contention that petitioners do not have standing to maintain this action.

### Motion To Dismiss

Appellees filed a motion to dismiss the appeal herein, claiming they were not properly served with the notice of appeal. There is no contention that the notice of appeal was filed or served prior to entry of the district court's final judgment.

■ The record discloses that the district court's judgment was entered August 16, 1971. Notice of appeal was filed in the district court August 17, 1971. Attached thereto is the certificate of counsel for appellants reciting service on all attorneys for appellees by mailing a copy to each of them, "on the _____ day of August 1971." Of course any day in August, after entry of the judgment, would be timely for service of the notice of appeal.

■ On August 20, 1971, the clerk of the supreme court advised all attorneys involved, by letter, that the appeal had been docketed and the record on appeal received and filed. On the same day, our court issued a notice which recited that appellants had filed a motion for acceleration of the cause; that a certificate of appellants' attorney indicated a copy of the motion had been served on attorneys for the appellees; and that the cause would be accelerated with appellees' briefs being required by September 7, 1971, unless cause was shown *instanter* why an order for acceleration should not issue or why additional time would be required. This notice was sent to all counsel.

The attorney for the State Committee, speaking for all appellees, orally agreed that the case could be accelerated if appellees were allowed to September 20, 1971, for their briefs. An order to that effect was entered August 26, 1971.

It is very apparent from the foregoing that all appellees had ample knowledge within a few days (much less than 30) after entry of the district court judgment that appellants were appealing from the judgment of the district court to this court. They cannot now be heard to say they received no notice of appeal.

■ In 4 Wright and Miller, Federal Practice and Procedure: Service and Filing § 1141, p. 570, it is said courts have refused to tolerate frivolous objections based on noncompliance with the filing requirements. We see no reason why the same should not apply to service requirements, and such would be applicable in this instance.

### Disposition

It is apparent from what we have said about the county committee having a right to resubmit a modified plan "as often as

4. J. Ray McDermott & Co., Inc. v. Hudson, Wyo., 348 P.2d 73, 75–76; Wyoming Department of Revenue v. Wilson, Wyo., 400 P.2d 144, 145, reh. den. 401 P.2d 960; Marathon Oil Company v. Pan American Petroleum Corporation, Wyo., 473 P.2d 575, 577; Monahan v. Board of Trustees of Elementary School District No. 9, County of Fremont, Wyo., 486 P.2d 235, 237.

necessary," as long as such committee continues in existence, that it should not have been denied an opportunity to do so.

■ Inasmuch as § 21.1–113 specifies that, if an approved plan has not been filed by December 1, 1971, then the state committee is authorized to reorganize the territory involved into a unified district or districts, it is conceivable that no different result will be accomplished than has been accomplished.

Nevertheless, we direct that appellee State Committee shall immediately suspend or vacate, at least until after December 1, 1971, its approval of the plan of the District Boundary Board of Natrona County; and that the state committee shall permit the county committee (county planning committee) to proceed with its duties, in keeping with the views expressed herein, until December 1, 1971.

In the meantime we will retain jurisdiction of the case until after December 1, 1971, at which time we will determine what further action, if any, needs to be taken.

Directions issued and jurisdiction retained.

GRAY, J., did not participate in the opinion.