UNITED STATES STEEL CORPORA-
TION, Appellant (Petitioner below),

v.

WYOMING ENVIRONMENTAL
QUALITY COUNCIL, Appellee
(Respondent below).

No. 4792.

Supreme Court of Wyoming.

March 2, 1978.

James B. Lee, Robert A. Bingham and
Stephen K. Schroeder, of Parsons, Behle &
Latimer, Salt Lake City, and John A. Mac-
Pherson, of MacPherson & Golden, Rawlins,
for appellant.

V. Frank Mendicino, Atty. Gen., Marilyn
S. Kite, Senior Asst. Atty. Gen., and Steve
F. Freudenthal, Asst. Atty. Gen., Cheyenne,
for appellee.

Before GUTHRIE, C. J., and McCLIN-
TOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

This appeal concerns an attempted
amendment or repeal of the Wyoming En-
vironmental Quality Council's water turbid-
ity standard,[1] and a denial of appellant-

1. Section 21, Water Quality Standards for Wy-
oming, provides:

"In all Class I and II waters, wastes of
other than natural origin shall not cause the

United States Steel's request for a variance from this standard. On May 1, 1975, appellant filed before the E.Q.C. a petition to amend or repeal the turbidity standard, and an application for a variance. Public notice of a hearing to be held on appellant's petition was given.[2] On July 30, 1975, the hearing was held. Prior thereto, appellant was informed that the hearing would not be conducted as a contested case and, as a result, at the hearing appellant was denied the right to cross-examine witnesses or submit briefs, and witnesses were not sworn. Subsequently, the E.Q.C. issued a resolution denying appellant's petition and application for a variance. Appellant filed a petition for review of this decision. The district court dismissed the petition for lack of subject-matter jurisdiction with respect to the turbidity standard, and entered summary judgment in favor of the E.Q.C. with respect to its denial of a variance. We will affirm this disposition.

The following questions are now before this court for resolution:

1. Whether the district court had jurisdiction to review the denial of appellant's petition.

2. Whether the E.Q.C. followed its own rules of procedure in denying the petition.

3. Whether § 35–502.45(o), W.S.1957, 1975 Cum.Supp., prohibiting water quality variances, is constitutionally infirm.

natural turbidity of the water to be increased by more than ten (10) Jackson Turbidity Units."

2. The public notice provided:

"NOTICE OF PUBLIC HEARING

"The Wyoming Environmental Quality Council will conduct a hearing on July 30, 1975 at 1:30 p. m. in the basement auditorium of the State Office Building West in Cheyenne to hear a petition from the U.S. Steel Corporation to amend the Wyoming Water Quality turbidity standards. The U.S. Steel water discharge permit for the Atlantic City iron ore operation near Lander contains a turbidity limitation based on the state water quality standards. U.S. Steel contends the turbidity standard is unnecessary and

## SUBJECT–MATTER JURISDICTION

We begin with the principle that the right of judicial review of administrative decisions is entirely statutory, and that orders of an administrative agency are not reviewable unless made so by statute. *City of Milwaukee v. Public Service Commission*, 11 Wis.2d 111, 104 N.W.2d 167, 174. See, 4 Davis, Administrative Law Treatise, §§ 28.-18, 28.19. As stated in *Klein v. Fair Employment Practices Commission*, 31 Ill. App.3d 473, 334 N.E.2d 370, 374:

"Each statute must be carefully examined to discover the legislature's intent to restrict judicial review of administrative action. (*Heikkila v. Barber* (1953), 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972.) While it is often said that barring constitutional impediments the legislature can preclude judicial review (See *Mount St. Mary's Hosp. v. Catherwood* (1970), 26 N.Y.2d 493, 511, 518–519, 311 N.Y.S.2d 863, 260 N.E.2d 508 (Fuld, C. J., Concurring)), such intent must be made specifically manifest, and persuasive reason must exist to believe such was the legislative purpose. (*Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681.) Only upon a showing of clear and convincing evidence of contrary legislative intent should the courts restrict access to judicial review. *Rusk v. Cort* (1962), 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809."

The applicable statute is found in the Wyoming Administrative Procedure

that there are no practical means available for abatement or control of turbidity.

"This hearing is being held pursuant to Wyoming Statutes 9–276.24, the Wyoming Administrative Procedure Act.

"Those desiring to make a presentation at this public hearing are requested to apply in writing for the desired amount of time. All requests and advance statements should be addressed to:
Robert E. Sundin, Director
Wyoming Environmental Quality Dept.
State Office Bldg. West
Cheyenne, Wy 82002

"Impromptu statements from the floor will be recognized by the Council on the hearing date. Written testimony will be accepted for a limited period after the formal hearing."

Act, § 9–276.32(a), W.S.1957, 1975 Cum. Supp., which provides in pertinent part:

"(a) Subject to the requirement that administrative remedies be exhausted *and in the absence of any statutory* or common-law *provision precluding* or limiting *judicial review*, any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review . . . ." [Emphasis supplied]

Since we are dealing with a petition to amend or repeal an administrative rule, we must refer to § 9–276.24, W.S.1957, 1975 Cum.Supp., which provides:

"Any interested person may petition an agency requesting the promulgation, amendment or repeal of any rule and may accompany his petition with relevant data, views and arguments. Each agency may prescribe by rule the form of such petition and the procedure for their [its] submission, consideration and disposition. Upon submission of such a petition, the agency as soon as practicable either shall deny the petition in writing (stating its reasons for the denials) or initiate rule-making proceedings in accordance with section 3 [§ 9–276.21]. *The action of the agency in denying a petition shall be final and not subject to review.*" [Emphasis supplied]

Appellant apparently concedes that if the E.Q.C. simply denied its petition it would not be entitled to judicial review under this statute. Appellant, however, contends that the E.Q.C. did not simply deny its petition; rather, the E.Q.C. initiated rule-making proceedings which are reviewable. To bolster its argument, appellant points to the public notice which says that the purpose of hearing was "to hear a petition from the U.S. Steel Corporation to amend the Wyoming Water Quality turbidity standards."

What appellant fails to recognize is that in order to initiate rule-making proceedings, there must be compliance with § 9–276.21, W.S.1957, 1975 Cum.Supp., which provides in pertinent part:

"(a) *Notice; hearing*—Prior to an agency's adoption, amendment, or repeal of all rules . . . the agency shall:

"(1) Give at least 20 days *notice of its intended action.* . . ." [Emphasis supplied]

The public notice herein gave no indication of the E.Q.C.'s "intended action"—it merely stated there was to be a hearing to consider appellant's petition pursuant to § 9–276.24, supra. It appears, then, that the E.Q.C. was merely seeking information on which to base a decision to grant or deny appellant's petition. If the petition had been granted, then—and only then—rule-making proceedings would be initiated pursuant to § 9–276.21, supra. The denial of appellant's petition, after such an informational hearing was not, therefore, subject to judicial review—except as hereinafter noted—and the district court correctly dismissed appellant's appeal for lack of subject-matter jurisdiction.

## REVIEW OF PROCEDURES

Appellant contends it is entitled to judicial review as to the regularity of the procedures used, regardless of the applicability of § 9–276.24, supra. Appellant complains specifically of the E.Q.C.'s failure to conduct the hearing in this case as it would in a contested case, with all the trial-type rights associated with such a hearing.

This court indicated in *Board of Trustees of School District No. 3 v. District Boundary Board*, Wyo., 489 P.2d 413, 417, that

" . . . regardless of precise statutory authority, courts must remain open with inherent power to review administrative action when it is alleged to be without authority or arbitrary."

Pursuant to § 9–276.24, supra, the E.Q.C. was given authority to promulgate procedures for the disposition of petitions to amend or repeal rules of the agency. No such specific procedures existed at the time

the instant petition was filed.[3] Nevertheless, the E.Q.C. had general procedure which it was bound to follow. See, *Coleman v. City of Gary*, 220 Ind. 446, 44 N.E.2d 101, 107; and *Davidson v. Review Board of the Indiana Employment Security Division*, 160 Ind.App. 221, 311 N.E.2d 472, 474.

Section 3, Rules of Practice and Procedure—Department of Environmental Quality (hereinafter Rules), provided that all hearings before the E.Q.C. "shall be held pursuant to these rules." Section 3(e) of the Rules provided that when a hearing was requested it "shall be conducted as a contested case." Section 27 of the Rules provided for exclusions from the operation of other rules, as follows:

"Nothing in these Rules shall be construed as prohibiting the Environmental Quality Council and the Administrators of the Divisions of Land, Air or Water Quality or their designee from holding *informational proceedings, hearings, or conferences for the purpose of aiding the Council or the Administrator in ascertaining and determining facts necessary for the performance and* [sic] *respective duties.* Any person believing himself aggrieved [sic] by a determination made by the Administrator or his designee of the Council following as [sic] informational proceeding, hearing, or conference *and who is otherwise entitled thereto*, may upon filing a petition or complaint, obtain a full hearing or review upon the merits, which matter shall be heard and tried de novo." [Emphasis supplied]

As noted previously, the E.Q.C. merely held an informational hearing—as allowed by Section 27—in order to determine whether appellant's petition should be denied, or rule-making initiated. The E.Q.C. not only did not violate its own procedures, it extended an opportunity to appellant to present its view in a form to which appellant was not otherwise entitled. There is nothing, therefore, that would appear to be arbitrary about the procedure adopted herein.

## CONSTITUTIONALITY OF VARIANCE STATUTE

■ Appellant separately requested a variance from the turbidity water quality standards, pursuant to § 35–502.45, W.S. 1957, 1975 Cum.Supp. The variance application was premised on the beliefs that (1) there was no apparent harm from appellant's discharges; (2) there was no practical means available to control an increase in turbidity; (3) the N.P.D.E.S. permit, issued by the Environmental Protection Agency, contained adequate protection in the form of a total suspended solids effluent limitation; and (4) the variance was necessary to avoid economic hardship. The E.Q.C. denied the application on the ground that water-quality variances were prohibited by § 35–502.45(*o*), supra, which provides:

"nothing in this section shall be construed to permit an application for a water variance. The application for water permits must be made solely under the provisions of W.S. 35–502.19."

Initially, it is noted that all permits under the Wyoming Environmental Quality Act allow variances, with the exception of water-quality permits. Comment, "Wyoming Environmental Quality Act of 1973," Wyo. Land & Water L.Rev., Vol. XII, No. 1, 65, 68 (1974). The basic reason for this distinction is that it is required to bring the Act into compliance with the federal regulations, which only provide for "schedules of compliance"—not variances. 40 C.F.R. § 124.44 (1976). The purported flexibility of a variance procedure, then, is provided as an inherent part of the permit system as outlined in § 35–502.19, W.S.1957, 1975 Cum.Supp.:

"(a) The administrator, after consultation with the advisory board, shall recommend to the director rules, regulations, standards and permit systems to promote the purposes of this act [§§ 35–502.1 to

3. It is noted that the E.Q.C. has since adopted a new set of procedures to remedy the apparent confusion caused in the instant case. This subsequent adoption of procedures in no way detracts from the fact that the then-existing procedures provided for informational-type hearings.

35–502.56]. Such rules, regulations, standards and permit systems shall prescribe:

"(i) Water quality standards specifying the maximum short-term and long-term concentrations of pollution, the minimum permissible concentrations of dissolved oxygen and other matter, and the permissible temperatures of the waters of the state;

"(ii) Effluent standards and limitations specifying the maximum amounts or concentrations of pollution and wastes which may be discharged into the waters of the state;

"(iii) Standards for the issuance of permits for construction, installation, modification or operation of any public water supply and sewerage system, treatment works, disposal system or other facility, capable of causing or contributing to pollution;

"(iv) Standards for the definition of technical competency and the certification of operating personnel for public water supply and sewerage systems, treatment works and disposal systems and for determining that the operation shall be under the supervision of certified personnel;

"(v) Standards for the issuance of permits as authorized pursuant to section 402(b) of the Federal Water Pollution Control Act as amended in 1972, and as it may be hereafter amended;

"(vi) In recommending any standards, rules, regulations, or permits, the administrator and advisory board shall consider all the facts and circumstances bearing upon the reasonableness of the pollution involved including:

"(A) The character and degree of injury to or interference with the health and well being of the people, animals, wildlife, aquatic life and plant life affected;

"(B) The social and economic value of the source of pollution;

"(C) The priority of location in the area involved;

"(D) The technical practicability and economic reasonableness of reducing or eliminating the source of pollution; and

"(E) The effect upon the environment;

"(vii) Such reasonable time as may be necessary for owners and operators of pollution sources to comply with rules, regulations, standards or permits."

Appellant challenges the constitutionality of § 35–502.45(*o* ), supra, on three grounds:

1. That a prohibition of water variances violates Article 1, Section 7, of the Wyoming Constitution, in that it is an exercise of absolute and arbitrary power;

2. That the prohibition denies due process by denying a fair opportunity to challenge applicable water-quality standards; and

3. That the prohibition denies equal protection of the laws by discriminating between water and other pollutant dischargers.

The first and second arguments relate to appellant's ability to challenge the water-quality standards in question. We find that appellant had adequate opportunities to challenge the original promulgation of the turbidity standard under the statutes—it merely failed to avail itself of those opportunities. Appellant had the opportunity to participate in the promulgation process (§ 9–276.21(a)(2), W.S.1957, 1975 Cum. Supp.), and to assure that there was procedural compliance (§ 9–276.21(c), W.S.1957, 1975 Cum.Supp.). Appellant had the opportunity to obtain judicial review, if it was affected in fact by the rule adopted. Section 9–276.32(a), supra. It had the opportunity to seek the amendment or repeal of the rule. Section 9–276.24, supra. Given these various means by which to present its views, we fail to see how appellant's rights to procedural due process have been infringed.

 Appellant argues that it has been denied equal protection because variances are available to other pollutant dischargers. It is true that there must be some difference which furnishes a reasonable basis for different legislation as to the different classes. See, *Miller v. Board of County Commissioners*, 79 Wyo. 502, 337 P.2d 262, 269; and *Bell v. Gray*, Wyo., 377 P.2d 924,

926. It is also true, however, that it is appellant's burden to show that it has been subjected to disparate treatment, resulting in a denial of equal protection. *Johnson v. Schrader,* Wyo., 507 P.2d 814, 818–819; and *Miller v. Board of County Commissioners,* supra, 337 P.2d at 271. There must be more than a bald assertion of what appellant thinks is discriminatory. In making its argument, appellant ignores the fact that it can seek a compliance schedule which will give additional time to comply with the turbidity standard. Section 35–502.-19(a)(vii), supra. This result is essentially the same as is obtained by the grant of a variance—which is limited in duration and subject to renewal. Sections 35–502.45(e) and (f), W.S.1957, 1975 Cum.Supp. Although the form of treatment is different, we see no appreciable difference in the result which can be obtained. Even if the results were somewhat disparate, we find that there are rational reasons to distinguish between water and other pollutant dischargers, including: the different nature of the natural resources; the difference in the number of pollutant dischargers within each class; and the difference in the extent of damage which can result from the various discharges.

Affirmed.

THOMAS, Justice, specially concurring, with whom RAPER, Justice, joins.

I concur in the result in this case and with substantially all of the majority opinion. I cannot agree with the proposition stated in the last paragraph of the majority as follows:

"* * * In making its argument, appellant ignores the fact that it can seek a compliance schedule which will give additional time to comply with the turbidity standard. Section 35–502.19(a)(vii), supra. This result is essentially the same as is obtained by the grant of a variance—which is limited in duration and subject to renewal. Sections 35–502.45(e) and (f), W.S.1957, 1975 Cum.Supp. * * *"

For me the holding that the appellant has not been denied equal protection under the law adequately is justified by its failure to meet its burden to show that it has been subjected to disparate treatment, and by the rule that water quality is a rational classification permitting a special legislative treatment. I am convinced that a person or firm given the benefit of a compliance schedule which does nothing more than grant additional time to comply with a standard is in a far different position than a person or firm granted a variance. For example, specific procedural steps are to be followed when a variance is being considered for renewal. Once the additional time granted under a compliance schedule has expired no similar rights are incorporated in the statute. It follows that a person who is given the right to seek a compliance schedule, which is granted, is not in essentially the same position as a person who seeks and is granted a variance. For me the quoted language is an incorrect statement of the law. Since I find it to be unnecessary to the result in this case I am compelled to protest the inclusion of this proposition, and to state that I do not agree with it.