ZOEL SYLVESTER *VS.* COMMISSIONER OF REVENUE & others.[1]

Suffolk. October 5, 2005. - November 16, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Taxation,* Real estate tax: exemption. *Veteran. Constitutional Law,* Taxation, Real estate tax, Veteran, Privileges and immunities, Equal protection of laws, Right to travel.

This court concluded that a statute requiring that veterans reside in Massachusetts for a specified number of years before becoming eligible for a partial real estate tax exemption did not burden the plaintiff veteran's right to travel in violation of both the equal protection and privileges or immunities clauses of the Fourteenth Amendment to the United States Constitution, where the residency requirement in the veterans' exemption did not rise to a level of interference with the right to travel that would justify the application of strict scrutiny [308-313], and where the residency requirement had a rational relationship to the legitimate government purpose of providing financial assistance to veterans who are disabled to permit them to maintain their domicile in the face of increased tax burdens [313-314]; for the same reason, the residency requirement did not violate Pt. 1, art. 6, of the Declaration of Rights of the Massachusetts Constitution [314].

CIVIL ACTION commenced in the Superior Court Department on February 20, 2003.

The case was heard by *Geraldine S. Hines*, J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Joel Z. Eigerman* for the plaintiff.

*Thomas A. Barnico*, Assistant Attorney General (*Daniel J. Hammond*, Assistant Attorney General, with him) for Commissioner of Revenue.

*Bryan R. LeBlanc* for town of Danvers.

GREANEY, J. We allowed an application for direct appellate

[1]Town of Danvers and other cities and towns of the Commonwealth similarly situated.

review to decide Federal and State constitutional challenges to a partial real estate tax exemption under G. L. c. 59, § 5, Twenty-second, afforded to certain disabled veterans (veterans' exemption). The exemption applies to real estate "occupied in whole or in part" as a disabled veteran's "domicile" in "the amount of two thousand dollars of [its] assessed taxable valuation or the sum of $250, whichever would result in an abatement of the greater amount of actual taxes due." *Id.* At issue is the imposition of a residency requirement, granting eligibility for the exemption to disabled veterans who have resided in Massachusetts "for five consecutive years next prior to date of filing for exemptions."[2] *Id.* The plaintiff claims that the five-year residency requirement is an unconstitutional infringement on his right to travel and serves no compelling or legitimate State interest, thereby violating the equal protection and privileges or immunities clauses of the Fourteenth Amendment to the United States Constitution. He also argues that the five-year residency requirement violates Pt. 1, art. 6, of the Declaration of Rights of the Massachusetts Constitution. We reject the plaintiff's constitutional challenges.

The factual and procedural background of the case is as follows. The plaintiff is a disabled veteran within the meaning

[2]The statute, G. L. c. 59, § 5, provides that certain "property shall be exempt from taxation," and reads as follows:

"Twenty-second, Real estate of the following classes of persons who are legal residents of the commonwealth and who are veterans, as defined in [G. L. c. 4, § 7, Forty-third], and whose last discharge or release from the armed forces was under other than dishonorable conditions and who were domiciled in Massachusetts for at least six months prior to entering such service, or who have resided in the commonwealth for five consecutive years next prior to date of filing for exemptions under this clause, hereinafter referred to in this clause as soldiers and sailors, provided such real estate is occupied in whole or in part as his domicile by such person, . . . to the amount of two thousand dollars of assessed taxable valuation or the sum of $250, whichever would result in an abatement of the greater amount of actual taxes due. No real estate shall be so exempt which the assessors shall adjudge has been conveyed to a soldier or sailor or to the spouse, surviving spouse, father or mother of a soldier or sailor to evade taxation."

of G. L. c. 59, § 5, Twenty-second (a),[3] and G. L. c. 4, § 7, Forty-third.[4] He served in the United States Marine Corps during World War II, and was wounded at the Battle of Saipan in 1944, and at the Battle of Iwo Jima in 1945. He was awarded the decoration of the Purple Heart, and subsequently a gold star to the Purple Heart, for wounds he suffered at the Battle of Saipan. The plaintiff was honorably discharged in 1945, with a fifty per cent disability from the United States Veterans Administration.

The plaintiff first moved to the town of Danvers and bought a home there in 1953. In 1958, he was granted a partial exemption under G. L. c. 59, § 5, Twenty-second, from a real estate tax assessed on his property. In 1994, he moved to New Hampshire. He returned to Danvers in 2000, and has since resided there in a home that he owns.

In January, 2001, the plaintiff applied for a partial exemption under G. L. c. 59, § 5, Twenty-second, in connection with a 2001 real estate tax assessed on his property.[5] His application was denied by the board of assessors of Danvers because he had not satisfied the five-year residency requirement.

At a special town meeting held on November 25, 2002, the

---

[3]General Laws c. 59, § 5, Twenty-second (a), applies to "[s]oldiers and sailors who, as a result of disabilities contracted while in the line of duty, have a disability rating of ten per cent or more as determined by the Veterans Administration or by any branch of the armed forces."

[4]General Laws c. 4, § 7, Forty-third, defines the term "veteran" to include "any person, (a) whose last discharge or release from his wartime service as defined herein, was under honorable conditions and who (b) served in the . . . marine corps . . . of the United States . . . for not less than 90 days active service, at least 1 day of which was for wartime service; provided, however, tha[t] any person who so served in wartime and was awarded a service-connected disability or a Purple Heart . . . shall be deemed to be a veteran notwithstanding his failure to complete 90 days of active service . . . ." The clause defines "Wartime service" to include service performed by a "World War II veteran" between September 16, 1940 and December 31, 1946. *Id.*

[5]Exemptions under G. L. c. 59, § 5, are determined in the first instance by the local assessor, subject to the regulations and guidelines issued by the Commissioner of Revenue (commissioner), who is charged with the administration and enforcement of the tax laws of the Commonwealth. See G. L. c. 14, §§ 1, 3, 6; G. L. c. 58, §§ 1, 1A, 3. The commissioner has, at all relevant times, instructed local assessors to observe and to enforce the residency requirements contained in the various clauses of G. L. c. 59, § 5.

town voted unanimously to accept, as pertaining to the fiscal year 2003, the provisions of the last paragraph of G. L. c. 59, § 5, Twenty-second E, which authorizes a municipality to impose a *one-year* residency requirement to an exemption sought under G. L. c. 59, § 5, Twenty-second.[6] Subsequently, in February, 2003, the plaintiff applied for the exemption under G. L. c. 59, § 5, Twenty-second E, having satisfied the one-year residency requirement. The board of assessors granted his application, allowing an abatement in the amount of $338.87.

The plaintiff then commenced this action in the Superior Court seeking injunctive and declaratory relief, as well as damages, with respect to the denial of his 2001 request for a partial exemption under G. L. c. 59, § 5, Twenty-second, and more generally with respect to the denials for exemptions under that statute "for the past three years." The plaintiff moved for partial summary judgment, and the defendants filed what we deem to be cross-motions for summary judgment, on the plaintiff's request for a declaration concerning the constitutionality of the five-year residency requirement of G. L. c. 59, § 5, Twenty-second (and in other similar clauses).[7]

In her memorandum and order, the judge rejected the argu-

---

[6] The last paragraph of G. L. c. 59, § 5, Twenty-second E, provides:

"Notwithstanding the provisions of this section, in any city or town which accepts the provisions of this paragraph, said exemptions available under clauses twenty-second, twenty-second A, twenty-second B, twenty-second C, twenty-second D and twenty-second E may be granted to otherwise eligible persons who have resided in the commonwealth for *one year* prior to the date of filing for exemptions under the applicable clause" (emphasis added).

[7] Clause Twenty-second of G. L. c. 59, § 5, is one of several real estate tax exemptions given to veterans. See G. L. c. 59, § 5, Twenty-second, Twenty-second A, Twenty-second B, Twenty-second C, Twenty-second D, and Twenty-second E. Each of these veterans' exemptions essentially contains the same five-year residency requirement that is found in clause Twenty-second (the requirement in clause Twenty-second D applies to surviving spouses instead of to veterans). The amount of the partial abatement afforded in each clause varies depending on the severity of the veteran's injury, per cent of disability, or in certain circumstances, loss of life.

In his complaint, the plaintiff also seeks certification of a class of veterans similarly situated and those persons who would receive real estate tax exemptions under clauses Twenty-second, Twenty-second A, Twenty-second B,

ment of the Commissioner of Revenue (commissioner) that the allowance of the plaintiff's application for an exemption under the one-year residency provision contained in the last paragraph of G. L. c. 59, § 5, Twenty-second E, see note 6, *supra*, rendered the case moot, pointing out that that provision "became effective for exemption applications beginning in fiscal year 2003" and did not resolve the plaintiff's claim that his constitutional rights were violated by the application of the five-year residency requirement of G. L. c. 59, § 5, Twenty-second, in fiscal years 2001 and 2002.[8] On the constitutional claims, the judge rejected the plaintiff's contention that the residency requirement in the veterans' exemption impinged on his right to travel to a degree that required strict scrutiny analysis. The judge concluded, under a rational basis analysis, that the residency requirement was constitutional under the Federal and State constitutions. Judgment entered dismissing the plaintiff's complaint, and as mentioned, we granted an application for direct appellate review.

1. The questions presented are ones of law, requiring no deference to the judge's decision. The burden is on the plaintiff to rebut the strong presumption that the statute is constitutional. See *Aloha Freightways, Inc.* v. *Commissioner of Revenue*, 428 Mass. 418, 423 (1998); *Frost* v. *Commissioner of Corps. & Taxation*, 363 Mass. 235, 247-248 (1973). With these considerations in mind, we take up the issues.

(a) The plaintiff argues that the residency requirement in the veterans' exemption burdens his right to travel in violation of both the equal protection and privileges or immunities clauses of the Fourteenth Amendment to the United States Constitution.[9] Relying on *Shapiro* v. *Thompson*, 394 U.S. 618 (1969) (and

---

Twenty-second C, Twenty-second D, and Twenty-second E of G. L. c. 59, § 5, but for each clause's five-year residency requirement. His request for declaratory relief pertains to all of these clauses. Because he moved for partial summary judgment before obtaining class certification, we focus on the clause that pertains to him, namely, the five-year residency requirement contained in G. L. c. 59, § 5, Twenty-second. Our conclusion applies equally to the five-year residency requirements in the other veterans' exemption clauses. We take note of, and later discuss, those provisions.

[8]The commissioner does not challenge this conclusion.

[9]The text of the first section of the Fourteenth Amendment to the United States Constitution reads as follows:

related decisions), and *Saenz* v. *Roe*, 526 U.S. 489 (1999), the plaintiff maintains that the residency requirement in the veterans' exemption requires, and fails, a strict scrutiny analysis.[10] The plaintiff also posits, if the latter argument is rejected, that the residency requirement lacks any rational basis.

In *Saenz* v. *Roe*, *supra*, the United States Supreme Court struck down a provision in the California Aid to Families with Dependent Children (AFDC) program limiting otherwise qualifying new residents, for the first year of their residence in California, to the monetary welfare benefits they would have received in the State of their prior residence, if those benefits were lower than California's. *Id.* at 494, 505. The Court concluded that the provision violated the third component of the constitutionally protected right to travel by imposing a discriminatory classification on travelers who elected to become permanent residents of California.[11] *Id.* at 502-505. The violation resulted when the State, without permissible justification,

---

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[10]The plaintiff did not cite *Saenz* v. *Roe*, 526 U.S. 489 (1999), in his memorandum of law in support of his partial motion for summary judgment. Nor did he mention the "privileges or immunities clause" in either his memorandum or motion. The judge decided the case presumably on the line of analysis developed in *Shapiro* v. *Thompson*, 394 U.S. 618 (1969), and related cases. The commissioner's appellate brief points out these omissions from the plaintiff's argument in the Superior Court, but makes no argument that the omissions constitute a waiver of any part of the plaintiff's Federal constitutional claim.

[11]The two other components to the "right to travel" are "the right of a citizen of one State to enter and to leave another State," and "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State." *Saenz* v. *Roe*, *supra* at 500. The United States Supreme Court has yet to identify the source of the first component in the Federal Constitution. *Id.* at 501. The second component, however, is "expressly protected" in the privileges and immunities clause of Article IV of the United States Constitution, which states that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several

denied new residents the right to be treated like other comparably situated residents (including eligible California citizens who had resided there for at least one year and new citizens who had previously resided in another country or State that provided a welfare benefit as generous as or more generous than California's). *Id.* at 504-507.

In reaching its conclusion, the Court made four points that are relevant to this case. First, the Court reaffirmed the holding of *Shapiro* v. *Thompson, supra* (and, by extension, later related decisions), that the constitutional right to travel is protected by the equal protection clause of the Fourteenth Amendment, so that a State classification involving a length of residence to qualify for welfare benefits has the effect of imposing a "penalty" on the right to travel that is unlawful unless the classification is necessary to advance a compelling governmental interest. *Saenz* v. *Roe, supra* at 498-499. Second, the Court declared that the third component of the right to travel — the right of a traveler who migrates to another State, and becomes a permanent resident of the new State, to be treated like other comparably situated citizens of that State — encompasses the new arrival's status as both a State citizen and a Federal citizen, and thus, the component is specifically protected by the privileges or immunities clause of the Fourteenth Amendment. *Id.* at 502-504. Third, the Court noted that a classification based entirely on a new arrival's duration of residency and location of prior residence treats comparably situated citizens of the same State unequally, thereby creating a discriminatory classification that is, in itself, a penalty, as that term is used in the *Shapiro* decision. *Id.* at 504-505, 507. Fourth, the Court pointed out that a discriminatory classification in a statute may be justifiable, but requires close examination of both the justification for the classification and the means employed by the State to accomplish the statute's underlying purpose. *Id.* at 505-507. If the discriminatory classification has no relevance to the need of the disfavored class for the benefit, the State action cannot be justified. *Id.*

In legal effect, the *Saenz* v. *Roe* decision constitutes both a reaffirmation of *Shapiro* v. *Thompson, supra* (and related deci-

States." *Id.*, quoting Article IV, § 2, of the United States Constitution.

sions), and a clarification of the framework to be applied in assessing the validity of the denial (or grant) of benefits affecting critical needs, political rights, or important interests, based on durational residency requirements. We do not read the *Saenz* v. *Roe* decision as requiring strict scrutiny for *all* durational residency requirements, imposed by a State as a condition to receiving a benefit, without examining the nature of the benefit at issue or the significance of the impact of the requirement on the right to travel. To read the *Saenz* v. *Roe* decision otherwise in a case like this one would disrupt the strong principle of federalism which, as we shall subsequently note, broadly protects the States from undue Federal interference in the tax field. See *Madden* v. *Kentucky*, 309 U.S. 83, 88, 93 (1940) (overruling *Colgate* v. *Harvey*, 296 U.S. 404, 416, 433, 436 [1935], which had concluded that Vermont income tax provision was invalid under privileges or immunities clause of Fourteenth Amendment, and stating that in taxation matters "even more than in other fields, legislatures possess the greatest freedom in classification"); *Carmichael* v. *Southern Coal & Coke Co.*, 301 U.S. 495, 509 (1937) ("This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation").

The residency requirement in the veterans' exemption does "not rise to a level of interference with the right to travel that would justify the application of strict scrutiny," *Lee* v. *Commissioner of Revenue*, 395 Mass. 527, 532 (1985), because the exemption neither imposes an impermissible "penalty" on the right to travel (as that term is used in *Shapiro* v. *Thompson, supra,* and related decisions), nor creates an impermissible classification (as that term is used in the *Saenz* v. *Roe* decision). The residency requirement in the veterans' exemption does not prevent new arrivals from purchasing property in Massachusetts or from establishing a domicile here. It recognizes that the plaintiff, as a taxpayer, has no right to a particular rate of taxation, and it is underpinned, as previously mentioned, by the well-settled law affording "States . . . large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Williams* v. *Vermont,*

472 U.S. 14, 22 (1985). Indeed, the Legislature was under no obligation to enact any veterans' exemption, and the exemption provides no benefit of any kind to Massachusetts residents who are not disabled veterans. As will later be explained, the *need* for the exemption, contrary to the situation presented in the *Saenz* v. *Roe* decision, *is directly related* to the period of time that a disabled veteran resides in the State.

The legal principles discussed above become critically relevant here because the State action in question does not involve any "necessity of life" (as was the case in *Saenz* v. *Roe, supra; Memorial Hosp.* v. *Maricopa County,* 415 U.S. 250 [1974]; and *Shapiro* v. *Thompson, supra*), or any fundamental political right (as was the case in *Dunn* v. *Blumstein,* 405 U.S. 330 [1972]). There is no claim that the State action has any significant impact on any other right, privilege, or immunity. There is no assertion that the plaintiff has been deprived of any benefit he had in New Hampshire. The plaintiff obviously is not a member of a suspect class. The "nature of the benefit denied" to the otherwise eligible veterans who have not satisfied the residency requirement is essentially the denial of a grant that takes the form of a modest tax abatement. The purpose of the classification is fair, and the means used to effect it are (as will be explained below) justifiable. The veterans' exemption, therefore, is not substantively comparable to the benefits at issue in the decisions cited above, nor is it comparable to statutes that have been found to be invalid in other cases,[12] and its residence requirement does not have a sufficiently perceptible effect on the right to travel so as to require the application of

[12]The judge correctly distinguished the five-year residency requirement from statutes invalidated in other cases that categorically denied a tax exemption or similar benefit by creating permanent classes of favored or disfavored residents. See *Attorney Gen. of New York* v. *Soto-Lopez,* 476 U.S. 898, 900, 908-909, 911 (1986) (invalidating civil service employment preference to veterans who were New York residents when they entered military service, noting that veterans who failed to satisfy New York residence requirements were permanently deprived civil service preference and possibly deprived civil service employment); *Hooper* v. *Bernalillo County Assessor,* 472 U.S. 612, 614, 616-617, 619-623 (1985) (invalidating, on equal protection grounds, "fixed-date residence requirement," namely, a New Mexico statute that provided property tax exemption for Vietnam veterans who had established residency in New Mexico before May 8, 1976).

strict scrutiny.[13] The judge correctly concluded that the rational basis standard is the appropriate one by which to measure the validity of the exemption.

(b) The five-year residency requirement has a rational relationship to a legitimate governmental purpose, namely, to provide financial assistance to veterans who are disabled so that they are able, when faced with increased tax burdens due to escalating real estate prices and corresponding property taxes, to continue financially to maintain their domicile. The commissioner submitted national and State data demonstrating that, historically and currently, the cost of single-family residential homes in the Northeast and in Massachusetts has been, and is, significantly higher than the national median, and that corresponding property taxes in Massachusetts have risen over the years. The Legislature could have rationally believed that, as housing prices and corresponding property taxes rise, disabled veterans who have resided for five years in Massachusetts have borne, and otherwise would continue to bear, a relatively higher property tax obligation than disabled veterans who are new or newer to the State.[14] By providing partial abatements in different amounts based on the extent of the veteran's disability or injury, see note 7, *supra*, the Legislature could have permissibly reasoned that more severely injured or disabled veterans might face greater obstacles in earning income and, thus, need an abatement in a higher amount. Further, eligible disabled veterans

[13]We reject the plaintiff's contention that he suffered an actual burden on his right to travel because "had he not moved to New Hampshire, he would never have suffered the loss of his abatement." This reasoning was rejected in *Lee* v. *Commissioner of Revenue*, 395 Mass. 527, 533 (1985) (explaining that distinction between those who move and those who stay and receive abatement "reflects preexisting differences; it does not establish new classes that are different only in the way the statute treats them," and noting that while one class receives abatement, other class has received capital gain which reflects increased value of prior home).

[14]Contrary to the plaintiff's argument, the five-year residency requirement is connected with home ownership. A reasonable construction of G. L. c. 59, § 5, Twenty-second, demonstrates that the real estate subject to the partial exemption is real estate "of . . . veterans," that is, real estate owned by them, and "occupied" by a disabled veteran "as his [or her] domicile." As such, the statute limits a disabled veteran who owns various parcels of real estate to receiving a partial exemption from property taxes only in connection with the real estate on which he is domiciled.

who have resided in Massachusetts for a period of less than five years are not excluded from later receiving, after five years of residence, the partial exemption under G. L. c. 59, § 5, Twenty-second. We conclude that the residency requirement does not violate the protections afforded to the right to travel in the Fourteenth Amendment. See *Frost* v. *Commissioner of Corps. & Taxation*, 363 Mass. 235, 248 (1973).

2. Finally, we reject the plaintiff's claim that the five-year residency requirement of G. L. c. 59, § 5, Twenty-second, violates Pt. 1, art. 6, of the Declaration of Rights of the Massachusetts Constitution. As explained, a legitimate public purpose supports the statute. The plaintiff has not demonstrated that, in violation of art. 6, the veterans' exemption imposes "privileges attributed to birth," see *Brown* v. *Russell*, 166 Mass. 14, 22 (1896), concerns public employment or office, see *Opinion of the Justices*, 303 Mass. 631, 654 (1939); *Brown* v. *Russell*, *supra* at 23-27, or constitutes an "improper use of State power for private interest," see *Commonwealth* v. *Ellis*, 429 Mass. 362, 371 (1999).

3. The judgment of dismissal is vacated. A judgment is to be entered declaring that the five-year residency requirement of G. L. c. 59, § 5, Twenty-second, is constitutional under the applicable clauses of the Fourteenth Amendment to the United States Constitution, and under Pt. 1, art. 6, of the Declaration of Rights of the Massachusetts Constitution.

*So ordered.*