# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 21

**OCTOBER TERM, A.D. 2021**

**February 2, 2022**

SEAN M. MARTIN,

Appellant
(Plaintiff),

v.

BOARD OF COUNTY
COMMISSIONERS OF LARAMIE
COUNTY and KENNETH GUILLE, in
his capacity as Laramie County
Assessor,

Appellees
(Defendants).

S-21-0071

*Appeal from the District Court of Laramie County*
The Honorable Peter Froelicher, Judge

*Representing Appellant:*
> David Ziemer, Legal Aid of Wyoming, Inc., Cody, Wyoming; Wendy S. Owens, Legal Aid of Wyoming, Inc., Gillette, Wyoming. Argument by Mr. Ziemer.

*Representing Appellees:*
> Bridget Hill, Attorney General; Brandi Lee Monger, Deputy Attorney General; Karl D. Anderson, Supervising Attorney General. Argument by Mr. Anderson.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter on January 18, 2022.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     Sean M. Martin brought a declaratory judgment action against the Board of County Commissioners of Laramie County and Laramie County Assessor Kenneth Guille (collectively referred to herein as "the County") seeking a declaration that the durational residency requirement in Wyo. Stat. Ann. § 39-13-105(a)(vi) (LexisNexis 2021), which allows qualified veterans to claim a property tax exemption, is unconstitutional.  The district court concluded the residency requirement is constitutional and granted summary judgment in favor of the County.  We affirm.

## ISSUE

[¶2]     Mr. Martin presents a single issue for our determination, which we rephrase:

> Does Wyo. Stat. Ann. § 39-13-105(a)(vi), which grants qualified veterans an annual property tax exemption provided they have been Wyoming residents for at least three years, violate the equal protection and privileges and immunities clauses of the Fourteenth Amendment to the United States Constitution and the constitutional right to interstate travel?

## FACTS

[¶3]     The facts and course of proceedings in this case are straightforward.  Section 39-13-105(a)(vi) provides a modest property tax exemption for qualifying veterans who have been bona fide citizens of the State of Wyoming for at least three years.  Mr. Martin is a decorated and honorably discharged veteran who owns real property in Laramie County.  However, he had not been a resident of Wyoming for three years when he filed suit.

[¶4]     Mr. Martin brought this action seeking a declaration that the durational residency requirement for the veteran tax exemption is unconstitutional.  Mr. Martin filed a motion for summary judgment and the County filed a response, which the district court considered a cross-motion for summary judgment.[1]  After a hearing, the district court denied Mr. Martin's motion and granted summary judgment to the County.  Mr. Martin appealed.

## STANDARD OF REVIEW

[¶5]     Under Wyoming Rule of Civil Procedure (W.R.C.P.) 56(a), a movant is entitled to summary judgment when he shows "there is no genuine dispute as to any material fact and

---

[1] The Wyoming Attorney General entered an appearance pursuant to Wyo. Stat. Ann. § 1-37-113 (LexisNexis 2021) to defend the constitutionality of § 39-13-105.  In light of that development, the district court relieved the County of "any obligation to participate in the proceedings or otherwise defend against [Mr. Martin's] claims."  Regardless, the County remains the defendant/appellee in this case and we will continue to refer to it as such.

1

the movant is entitled to judgment as a matter of law." This Court reviews de novo the district court's order granting summary judgment. *Gowdy v. Cook,* 2020 WY 3, ¶ 21, 455 P.3d 1201, 1206-07 (Wyo. 2020) (citing *Bear Peak Res., LLC v. Peak Powder River Res., LLC,* 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017) (other citations omitted)).

[¶6]    The determination of whether a statute is constitutional is a question of law, over which this Court exercises de novo review. *Harrison v. State,* 2021 WY 40, ¶ 11, 482 P.3d 353, 357 (Wyo. 2021) (citing *Sheesley v. State*, 2019 WY 32, ¶ 3, 437 P.3d 830, 833 (Wyo. 2019)) (other citations, quotation marks, and italics omitted). "'Statutes are presumed constitutional, and we resolve any doubt in favor of constitutionality.'" *Dugan v. State*, 2019 WY 112, ¶ 87, 451 P.3d 731, 756 (Wyo. 2019), *cert. denied*, ___ U.S. ___, 140 S.Ct. 1298, 206 L.Ed.2d 377 (2020) (quoting *Sheesley*, ¶ 3, 437 P.3d at 833). *See also, Guy v. State,* 2008 WY 56, ¶ 43, 184 P.3d 687, 700 (Wyo. 2008) ("[t]here is a strong presumption in favor of the constitutionality of a statute") (citing *Giles v. State,* 2004 WY 101, ¶ 10, 96 P.3d 1027, 1030 (Wyo. 2004)).

## DISCUSSION

[¶7]    The veteran tax exemption applicable to Mr. Martin is found in § 39-13-105(a)(vi):[2]

> (a)    The following persons who are bona fide Wyoming residents for at least three (3) years at the time of claiming the exemption are entitled to receive the tax exemption provided by W.S. 39-11-105(a)(xxiv):
>
> * * *
>
> (vi)    An honorably discharged veteran who served in the military service of the United States, who was awarded the armed forces expeditionary medal or other authorized service or campaign medal indicating service for the United States in any armed conflict in a foreign country[.]

Wyo. Stat. Ann. § 39-11-105(a)(xxiv) (LexisNexis 2021) lists property belonging to veterans as one of the categories exempt from property taxation. Section 39-13-105(b) limits the annual exemption to $3,000 of assessed property value.

[¶8]    The veteran tax exemption has been available in Wyoming in various statutory forms since 1917. *Miller v. Bd. of Cnty. Comm'rs of Cnty. of Natrona,* 79 Wyo. 502, 510, 517, 337 P.2d 262, 263, 266 (Wyo. 1959). There have been challenges to the statute's

---

[2] Other subsections of § 39-13-105(a) list additional ways veterans and their surviving spouses can qualify for the tax exemption, but they all require at least three years of residency. Section 39-13-105(a)(i)-(v), (vii).

2

constitutionality over the years, and each time it has passed muster. *Id. See also, State ex rel. Bd. of Comm'rs of Goshen Cnty. v. Snyder,* 29 Wyo. 199, 212 P. 771 (1923); *Harkin v. Bd. of Comm'rs of Niobrara Cnty.,* 30 Wyo. 455, 222 P. 35 (1924). However, none of the cases address the precise issue presented here.

### The Fourteenth Amendment and The Right to Travel

[¶9]     Mr. Martin claims the three-year durational residency requirement for receiving the veteran tax exemption in § 39-13-105(a)(vi) violates his federal constitutional rights to the equal protection of the law, the privileges and immunities of United States citizens, and the right to interstate travel.[3]

[¶10]   The Fourteenth Amendment to the United States Constitution guarantees that states will not interfere with United States citizens' rights to equal protection of the law and the privileges and immunities of all citizens.

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

[¶11]   The right to interstate travel is not specifically found in the Constitution. *Saenz v. Roe,* 526 U.S. 489, 498, 119 S.Ct. 1518, 1524, 143 L.Ed.2d 689 (1999). "Yet the 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence." *Id.* (quoting *United States v. Guest,* 383 U.S. 745, 757, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966)). In *Shapiro v. Thompson,* 394 U.S. 618, 629-30, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969), *overruled in part on other grounds by Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court stated: "[T]he nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by

---

[3] Mr. Martin does not cite, or make any argument based upon, the Wyoming Constitution. The Wyoming Constitution contains several equality provisions, rather than a single equal protection provision like the Fourteenth Amendment. *Compare* U.S. Const. amend. XIV, § 1, *with* Wyo. Const. art. 1, §§ 2, 3, 34 and art. 3, § 27. Nevertheless, we have recognized "the federal equal protection clause and the Wyoming equality provisions 'have the same aim in view.'" *Greenwalt v. Ram Rest. Corp.,* 2003 WY 77, ¶ 39, 71 P.3d 717, 730 (Wyo. 2003) (quoting *Washakie Cnty. Sch. Dist. No. 1 v. Herschler,* 606 P.2d 310, 332 (Wyo. 1980)) (other citations omitted).

statutes, rules, or regulations which unreasonably burden or restrict this movement." In *Shapiro,* the court recognized the right to interstate travel (and relocation) as a fundamental right under the equal protection clause. *Id.,* 394 U.S. at 628-30, 638, 89 S.Ct. at 1328-29, 1333. In *Saenz,* the court ruled the privileges and immunities provision protects interstate travel, particularly the rights of citizens who elect to become permanent residents of a state to be treated like other citizens of the state. *Id.,* 526 U.S. at 501-03, 119 S.Ct. at 1526. Despite identifying a different provision of the Fourteenth Amendment as protecting the right to interstate travel, the court in *Saenz* used an analysis similar to its equal protection evaluation in *Shapiro. Id.,* 526 U.S. at 501-507, 119 S.Ct. at 1525-28.

[¶12]  "Equal protection requires that 'all persons similarly situated . . . be treated alike.'" *Bird v. Wyo. Bd. of Parole,* 2016 WY 100, ¶ 6, 382 P.3d 56, 61 (Wyo. 2016) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)). Equal protection analysis, therefore, begins with a determination of whether the classes, which the claimant alleges are treated differently under a statute, are similarly situated. *Bird*, ¶ 7, 382 P.3d at 61 (citing *Reiter v. State*, 2001 WY 116, ¶ 26, 36 P.3d 586, 594 (Wyo. 2001)). If the classes are not similarly situated, there can be no equal protection violation. *Id.*

[¶13]  Once a court determines the classes are similarly situated, the next step in an equal protection analysis is to determine whether the legislature was justified in treating them differently. To do so, we must decide what level of equal protection scrutiny applies. *Hageman v. Goshen Cnty. Sch. Dist. No. 1,* 2011 WY 91, ¶ 54, 256 P.3d 487, 503 (Wyo. 2011). *See also, Bird,* ¶ 7 n.1, 382 P.3d at 61 n.1. The level of scrutiny depends upon the nature of the classification. *Hageman*, ¶ 54, 256 P.3d at 503 ("If we determine that the classification does 'treat similarly situated persons unequally,' we apply . . . different levels of scrutiny depending upon the nature of the classification to determine whether equal protection is violated.") (quoting *Ellett v. State,* 883 P.2d 940, 944 (Wyo. 1994)).

[¶14]  "The rational relationship test is utilized when an ordinary interest is involved." *Mills v. Reynolds,* 837 P.2d 48, 53 (Wyo. 1992) (citing *Hays v. State ex rel. Wyo. Workers' Comp. Div.,* 768 P.2d 11 (Wyo. 1989)). *See also, Hageman,* ¶ 54, 256 P.3d at 503 (the rational relationship test is used when a statute "only affects ordinary interests in the economic and social welfare area" (citations omitted)). Under that test, the law will be sustained against an equal protection challenge "if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254. *See also, Bird,* ¶ 7, 382 P.3d at 61 (if two groups are similarly situated, the court must determine if the disparate treatment "is rationally related to a legitimate state interest"). However, when a law disproportionately affects more than ordinary rights or the classification is inherently suspect, a more critical analysis is warranted.

> If a fundamental right is implicated or if the classification is inherently suspect, we employ a strict scrutiny standard. Under

the strict scrutiny test, the classification must be closely scrutinized to determine if it is necessary to achieve a compelling state interest. In addition, the burden is on the State to demonstrate that it could not use a less onerous alternative to achieve its objective.

*Mills,* 837 P.2d at 53. *See also, Hageman,* ¶ 54, 256 P.3d at 503 (if the classification "affects a fundamental interest or creates an inherently suspect classification, the court must strictly scrutinize that statute to determine if it is necessary to achieve a compelling state interest" (citations omitted)).[4]

### *Durational Residency Caselaw*

[¶15] The Supreme Court applied strict scrutiny to determine whether durational residency requirements for receiving public assistance or welfare benefits were constitutional in *Saenz,* 526 U.S. at 504, 119 S.Ct. at 1527 and *Shapiro,* 394 U.S. at 634, 89 S.Ct. at 1331. Mr. Martin relies on these cases for his contention we should use strict scrutiny to test the constitutionality of the residency requirement in § 39-13-105(a)(vi).

[¶16] In *Shapiro,* 394 U.S. at 622-27, 89 S.Ct. at 1325-27, Connecticut, the District of Columbia, and Pennsylvania (hereinafter collectively referred to as "the states") required people to be residents of the states for at least one year before they could qualify for welfare benefits. The Supreme Court ruled the states' durational residency restrictions violated the equal protection clause. *Id.,* 394 U.S. at 638, 89 S.Ct. at 1333. It was undisputed that the waiting-period requirements treated groups of similarly situated people differently based upon when they arrived in the states. *Id.,* 394 U.S. at 627, 89 S.Ct. at 1327. As explained above, the Supreme Court recognized the right to interstate travel (and relocation) as a fundamental right under the equal protection clause. *Id.,* 394 U.S. at 629-31, 89 S.Ct. at 1328-29. Because the one-year requirement penalized the right to travel, the court applied the strict scrutiny standard. *Id.,* 394 U.S. at 634, 89 S.Ct. at 1331.

[¶17] One of the justifications offered by the states as a compelling reason for the waiting period was "to preserve the fiscal integrity of state public assistance programs." *Id.,* 394 U.S. at 627, 89 S.Ct. at 1328. The states "asserted that people who require welfare assistance during their first year of residence . . . are likely to become continuing burdens on state welfare programs." *Id.,* 394 U.S. at 627-28, 89 S.Ct. at 1328. The waiting periods were intended to deter indigent people from moving to the jurisdiction so that "state programs to assist long-time residents [would] not be impaired[.]" *Id.,* 394 U.S. at 628, 89 S.Ct. at 1328. The Supreme Court held that purpose was impermissible because it was

---

[4] An intermediate level of scrutiny applies to a small number of classifications, including those based upon gender. *Craig v. Boren,* 429 U.S. 190, 197-98, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976). *See also, Bird,* ¶ 7 n.1, 382 P.3d at 61 n.1 (citing *City of Cleburne*, 473 U.S. at 441, 105 S.Ct. at 3255). Under intermediate scrutiny, the classification must be substantially related to an important governmental interest. *Bird,* ¶ 7 n.1, 382 P.3d at 61 n.1.

designed to interfere with United States citizens' constitutional right to interstate travel. *Id.,* 394 U.S. at 629-31, 89 S.Ct. at 1328-29. "If a law has 'no other purpose . . . than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it [is] patently unconstitutional.'" *Id.,* 394 U.S. at 631, 89 S.Ct. at 1329 (quoting *United States v. Jackson,* 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968)). The states also justified the waiting period as a means of distinguishing between "new and old residents on the basis of the contribution they have made to the community through the payment of taxes." *Id.,* 394 U.S. at 632, 89 S.Ct. at 1330. The court stated the equal protection clause prohibits appropriation of state services according to the individual tax contributions of residents. *Id.,* 394 U.S. at 632-33, 89 S.Ct. at 1330. Because the states did not provide a compelling reason for the durational residency restrictions, the court declared them unconstitutional. *Id.,* 394 U.S. at 638, 89 S.Ct. at 1333.

[¶18] *Saenz* tested the constitutionality of a California statute which limited welfare benefits during the first year of residency to the amount new residents would have qualified for in the state of their prior residence. *Id.,* 526 U.S. at 493, 119 S.Ct. at 1521-22. In advancing "an entirely fiscal justification" for the scheme, California demonstrated the statutory limitation would save the state millions of dollars per year. *Id.,* 526 U.S. at 506, 110 S.C. at 1528. The Supreme Court ruled the welfare cap violated the right to travel under the privileges and immunities clause because it treated new residents differently than longer-term residents. *Id.,* 526 U.S. at 502-07, 119 S.Ct. at 1526-28. *See also, Sylvester v. Comm'r of Revenue,* 445 Mass. 304, 837 N.E.2d 662, 666-67 (2005) (in *Saenz,* 526 U.S. at 502-04, 119 S.Ct. 1518, the Supreme Court declared "the right of a traveler who migrates to another State, and becomes a permanent resident of the new State, to be treated like other comparably situated citizens of that State encompasses the new arrival's status as both a State citizen and a Federal citizen, and thus, the component is specifically protected by the privileges or immunities clause of the Fourteenth Amendment."). The California statute's unequal treatment of new residents in qualifying for welfare benefits penalized the right to interstate travel. *Saenz,* 526 U.S. at 505, 119 S.Ct. at 1527.

[¶19] The Supreme Court in *Saenz* did not articulate a specific level of scrutiny, but it said,

> [n]either mere rationality nor some intermediate standard of review should be used to judge the constitutionality of a state rule that discriminates against some of its citizens because they have been domiciled in the State for less than a year. The appropriate standard may be more categorical than that articulated in *Shapiro, . . .* but it is surely no less strict.

*Saenz,* 526 U.S. at 504, 119 S.Ct. at 1527. Although California disavowed "any desire to fence out the indigent" like the states in *Shapiro,* its interest in saving state funds by limiting welfare benefits did not justify discriminating against citizens who, although

6

newly arrived in the state, were as needy as established residents. *Id.,* 526 U.S. at 506-07, 119 S.Ct. at 1528.

[¶20] Other Supreme Court cases demonstrate additional circumstances when strict scrutiny review is appropriate. In *Mem'l Hosp. v. Maricopa Cnty.,* 415 U.S. 250, 251-54, 259, 94 S.Ct. 1076, 1078-84, 1088, 39 L.Ed.2d 306 (1974), the Supreme Court held Arizona's statute, which required "a year's residence in a county as a condition to receiving nonemergency hospitalization or medical care at the county's expense," violated equal protection. Analogizing to *Shapiro,* the court ruled "medical care is as much a basic necessity of life to an indigent as welfare assistance." *Id.,* 415 U.S. at 259, 94 S.Ct. at 1082 (quotation marks and citations omitted). "Arizona's durational residence requirement for free medical care [had to] be justified by a compelling state interest and . . ., such interest[] being lacking, the requirement [was] unconstitutional." *Id.,* 415 U.S. at 254, 94 S.Ct. at 1080. In *Dunn v. Blumstein,* 405 U.S. 330, 334-39, 92 S.Ct. 995, 999-1004, 31 L.Ed.2d 274 (1972), the Supreme Court declared Tennessee's statute, which required new residents to live in the state for one year before being eligible to vote, violated the equal protection clause. Strict scrutiny was appropriate because the durational residency requirement interfered with the fundamental rights to participate in the political process and interstate travel. *Id. Cf. Atty. Gen. of New York v. Soto-Lopez,* 476 U.S. 898, 900-01, 911-12, 106 S.Ct. 2317, 2319, 2323-26, 90 L.Ed.2d 899 (1986) (in a plurality opinion, the Supreme Court struck down, as violative of the right to travel and equal protection, a state classification which permanently foreclosed veterans, who were not New York residents when they entered military service, from claiming a civil service employment preference accorded to other resident veterans. The Supreme Court applied strict scrutiny because, although the civil service preference was not of "the same level of importance as the necessities of life and right to vote," it was "substantial" as it could "mean the difference between winning or losing civil service employment, with its attendant job security, decent pay, and good benefits.").

[¶21] However, this line of cases does not, as Mr. Martin suggests, mean that all durational residency requirements interfere with the right to interstate travel and must be strictly scrutinized. Another line of cases addresses durational residency requirements for less crucial governmental services.

[¶22] In *Sosna v. Iowa,* 419 U.S. 393, 395, 95 S.Ct. 553, 555, 42 L.Ed.2d 532 (1975), Iowa required a person to be a resident of the state for at least one year before suing for a divorce. Although "[s]tate statutes imposing durational residency requirements were . . . invalidated when imposed by States as a qualification for welfare payments, *Shapiro, supra*; for voting, *Dunn, supra;* and for medical care, *Maricopa County, supra*," the Supreme Court stated "none of those cases intimated that the States might never impose durational residency requirements." *Id.,* 419 U.S. at 406, 95 S.Ct. at 560. Some durational residency requirements may not be penalties upon the exercise of the constitutional right of interstate travel. *Id.,* 419 U.S. at 406 n.19, 95 S.Ct. at 561 n.19 (citing *Shapiro,* 394 U.S.

7

at 639 n.21). *See also, Maricopa Cnty.,* 415 U.S. at 258-59, 94 S.Ct. at 1082 ("Although any durational residence requirement imposes a potential cost on migration, the Court in *Shapiro* cautioned that some 'waiting-period(s) . . . may not be penalties.'" (quoting *Shapiro,* 394 U.S. at 638 n.21, 89 S.Ct. at 1333 n.21)). The Supreme Court pointed out Iowa's waiting period for obtaining a divorce was unlike the important rights at issue in *Shapiro, Dunn,* and *Maricopa County. Id.*, 419 U.S. at 405-06, 95 S.Ct. at 560-61. The plaintiff in *Sosna* would eventually qualify for a divorce, giving her exactly the same benefit she sought shortly after she moved to the state. *Id.* Moreover, the right to a divorce falls under the category of domestic relation law, "an area that has long been regarded as a virtually exclusive province of the States." *Id.,* 419 U.S. at 404, 95 S.Ct. at 559. The court did not rule the statute penalized the fundamental right to travel or apply the strict scrutiny test. *Id.,* 419 U.S. at 406-07, 95 S.Ct. at 561. It concluded Iowa's one-year residency requirement for obtaining a divorce was reasonably justified by the state's legitimate interests in requiring a resident to have some true attachment to the state before initiating a court proceeding and insulating its decrees from collateral attack in other jurisdictions. *Id.,* 419 U.S. at 406-07, 95 S.Ct. at 560-61.

[¶23] In *Starns v. Malkerson,* 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), the Supreme Court summarily affirmed the federal district court's decision in *Starns v. Malkerson,* 326 F.Supp. 234 (D. Minn. 1970). The federal district court ruled the University of Minnesota's regulation which required students to be bona fide residents of the state for one year before qualifying for in-state resident tuition did not penalize interstate travel, so the court was not required to apply strict scrutiny to the students' equal protection claims. *Starns,* 326 F.Supp. at 235-37. The district court distinguished *Shapiro* because the Minnesota waiting period did not have the specific objective of excluding poor citizens who may need relief from the state. *Id.* at 237. Moreover, the restriction on in-state tuition did not deny the basic necessities of life to residents. *Id.* at 238. The court concluded the one-year waiting period for in-state tuition was justified under rational basis review. *Id.* at 241. It reasonably promoted the university's legitimate "purposes of financing, operating and maintaining its educational institutions." *Id.* at 240. Although payment of taxes, fiscal integrity, and budgetary planning had been rejected as compelling purposes under strict scrutiny review, they may be legitimate governmental objectives under rational basis review. *Id.* (citing *Kirk v. Bd. of Regents of Univ. of Cal.,* 273 Cal.App.2d 430, 78 Cal.Rptr. 260 (1969), and *Shapiro, supra*)). *See also, MSAD 6 Bd. of Directors v. Town of Fry Island,* 229 A.3d 514, 526 (Me. 2020) (a law which required the legislature's approval before a town could withdraw from a school district was rationally related to the legitimate state interests of financing public programs and addressing budgetary concerns).

[¶24] In *Harris v. Hahn,* 827 F.3d 359, 361, 363-72 (5th Cir. 2016), the Fifth Circuit applied rational basis review in ruling a statute which provided tuition waivers to Texas public universities for disabled veterans who enlisted in Texas or were residents of Texas when they enlisted did not violate equal protection or the privileges and immunities clause.

8

Although *Harris* involved a fixed-point residency requirement, the court's discussion of how it assigned the level of equal protection scrutiny is informative. Unlike the cases where strict scrutiny was applied, the Texas law did not improperly dissuade the poor from moving to the jurisdiction or otherwise interfere with the right to interstate travel by depriving them of basic needs. *Id.* at 371. To the contrary, Texas was "under no constitutional obligation to provide *any* educational benefits to veterans." *Id.* at 372 (emphasis added). The benefit was "purely a gratuity." *Id.*

[¶25] The Supreme Court's explanation of how it assigned the level of scrutiny in *Maricopa County* reveals the nature of the governmental benefit at issue informs the analysis.

> *Shapiro* and *Dunn* stand for the proposition that a classification which 'operates to [p]enalize those persons . . . who have exercised their constitutional right of interstate migration,' must be justified by a compelling state interest. Although any durational residence requirement imposes a potential cost on migration, the Court in *Shapiro* cautioned that some 'waiting-period(s) . . . may not be penalties.' In *Dunn v. Blumstein, supra,* the Court found that the denial of the franchise, 'a fundamental political right,' was a penalty requiring application of the compelling-state-interest test. In *Shapiro*, the Court found denial of the basic 'necessities of life' to be a penalty. Nonetheless, the Court has declined to strike down state statutes requiring one year of residence as a condition to lower tuition at state institutions of higher education.
>
> Whatever the ultimate parameters of the *Shapiro* penalty analysis, it is at least clear that medical care is as much 'a basic necessity of life' to an indigent as welfare assistance. And, governmental privileges or benefits necessary to basic sustenance have often been viewed as being of greater constitutional significance than less essential forms of governmental entitlements.

*Maricopa Cnty.,* 415 U.S. at 258-59, 94 S.Ct. at 1082-83 (citations omitted). *See also, Rajterowski v. City of Sycamore,* 405 Ill.App.3d 1086, 940 N.E.2d 682, 686, 695-96 (2010) (rational basis review was appropriate for testing an ordinance which provided a transfer tax exemption to buyers of homestead real estate who had been residents of the city for at least one year; the interest in purchasing private property without incurring a tax was not sufficiently important to justify strict scrutiny).

[¶26]   What we glean from our study of these cases is the nature of the right restricted by the durational residency requirement affects whether the statute penalizes the right to interstate travel, which, in turn, determines the level of scrutiny.  *See Sylvester,* 837 N.E.2d at 667 (Supreme Court precedent does not require "strict scrutiny for *all* durational residency requirements, imposed by a State as a condition to receiving a benefit, without examining the nature of the benefit at issue or the significance of the impact of the requirement on the right to travel.").  When the right concerns the basic necessities of living, such as welfare benefits or medical care, or fundamental political rights, strict scrutiny is required because the restriction penalizes residents for interstate travel.  *Maricopa Cnty.,* 415 U.S. at 258-60, 94 S.Ct. at 1082-83.  *See also, Sylvester,* 837 N.E.2d at 667 (indicating strict scrutiny is reserved for cases involving "the validity of the denial (or grant) of benefits affecting critical needs, political rights, or important interests, based on durational residency requirements" (discussing *Saenz* and *Shapiro*)).  However, when less weighty interests are affected, such as a delay in obtaining a divorce (*Sosna*) or qualifying for college tuition discounts (*Starns* and *Harris*), the right to interstate travel is not penalized and a lower level of scrutiny is warranted.

### Level of Scrutiny for § 39-13-105(a)(vi)

[¶27]   The district court found, and the parties agree, § 39-13-105(a)(vi) treats two groups of similarly situated veterans differently.  Both groups include Wyoming residents who own real property in the state, were honorably discharged from the United States military, and were awarded medals for serving in armed conflict in a foreign country.  *Id.*  These similarly situated groups are treated differently because those who have resided in Wyoming for at least three years are entitled to the tax exemption, while shorter-term residents are not.

[¶28]   We turn then to the question of what level of scrutiny applies to the classification.  Mr. Martin claims strict scrutiny applies because § 39-13-105(a)(vi) infringes on his fundamental right to travel.  The County claims Mr. Martin's fundamental right to travel is not impacted and the law must only be justified under the rational basis test.

[¶29]   We conclude the veteran tax exemption in § 39-13-105(a)(vi) does not interfere with the fundamental right to travel.  Consequently, we will apply the rational basis test to determine if the classification is justified.  The benefit provided by the tax exemption does not pertain to the basic necessities of living or serve as a disincentive for indigents to move to the state, like those addressed in *Shapiro, Saenz,* and *Maricopa County.*  The durational residence requirement in the veteran tax exemption also does not impact veterans' fundamental political rights as in *Dunn* or cause a permanent loss of an employment opportunity like that recognized in the plurality opinion in *Soto-Lopez.*  Section 39-13-105(a)(vi)'s modest tax exemption is more akin to the discounted tuition in *Starns* and *Harris* or the right to obtain a divorce in *Sosna*, which did not interfere with interstate

10

travel. Like with the veteran tuition benefit in *Harris,* the Wyoming legislature was not obligated to provide any veteran tax exemption at all.

[¶30] The Massachusetts Supreme Court discussed a statutory provision similar to § 39-13-105(a)(vi) in *Sylvester.* The Massachusetts statute provided a partial real estate tax exemption on the domiciles of disabled veterans, provided the veterans had resided in the state for "five consecutive years . . . prior to the date of filing for exemptions." *Sylvester,* 837 N.E.2d at 663 (quoting Mass. Gen. Laws ch. 59, § 5). The Massachusetts court ruled the residency requirement did not impose an impermissible penalty on the right to travel so strict scrutiny was not required. *Id.* at 667. The court noted the residency requirement did not prevent newly arrived veterans from purchasing property or establishing a domicile in Massachusetts. *Id.* Furthermore, the veterans had no right to a particular rate of taxation. *Id.* In fact, the legislature was under no obligation to enact any veterans' exemption at all. *Id.* at 667-68.

### *Rational Basis Review of § 39-13-105(a)(vi)*

[¶31] Under the rational basis test, a classification does not violate equal protection as long as it is rationally related to a legitimate governmental interest. *Bird,* ¶ 7, 382 P.3d at 61 (citing *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254). *See also, Hageman,* ¶ 54, 256 P.3d at 503 ("[I]f the statute . . . only affects ordinary interests in the economic and social welfare area, the court need only determine that it is rationally related to a legitimate state objective." (quoting *Ellett v. State,* 883 P.2d 940, 944 (Wyo. 1994), and *White v. State,* 784 P.2d 1313, 1315 (Wyo. 1989)). In conducting a rational basis review, we must keep a number of principles in mind. Although the rational basis standard is not toothless, "[e]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices and line-drawing." *Greenwalt,* ¶ 39, 71 P.3d at 730-31. We review the classification with a strong presumption it is valid. *Id.* "[The] party attacking the rationality of the legislative classification has the heavy burden of demonstrating the unconstitutionality of a statute beyond a reasonable doubt." *Id.*

[¶32] Notably, the Supreme Court has given great deference to state legislatures in classifications for the purpose of taxation. "[W]e have repeatedly pointed out that '[l]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes.'" *Armour v. City of Indianapolis,* 566 U.S. 673, 680, 132 S.Ct. 2073, 2080, 182 L.Ed.2d 998 (2012) (quoting *Regan v. Taxation With Representation of Wash.,* 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983)) (other citations omitted). *See also, Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973) ("Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.").

11

[A] law [is] constitutionally valid if there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. And it falls within the scope of our precedents holding that there is such a plausible reason if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Armour,* 566 U.S. at 681, 132 S.Ct. at 2080 (citations and quotation marks omitted).

[¶33] The steps for the application of rational basis review are: "1. [i]dentify the legislative classification at issue; 2. [i]dentify the legislative objectives; [and] 3. [d]etermine whether the legislative classification is rationally related to the achievement of an appropriate legislative purpose. [In the third step] the court is evaluating whether the legislature's objectives justify the statutory classification." *Greenwalt,* ¶ 40, 71 P.3d at 732.

[¶34] The veteran tax exemption in § 39-13-105(a)(vi) passes the rational basis test. As we have already said, the legislative classification at issue applies to all decorated, honorably discharged veterans but, for purposes of the tax exemption, treats those who have lived in the state for at least three years differently from those who have not. *Id.* The County asserts the objective of the classification is to encourage veterans to settle in the state long-term.[5] *Miller* recognized that one of the legislature's general objectives in enacting the veteran tax exemption was to encourage "colonization in the State." *Miller,* 337 P.2d at 519. We would add that the statute encourages settlement in the state by people of distinguished character, which is in the state's best interest.

[¶35] Mr. Martin does not claim encouraging veterans to settle in Wyoming is not a valid purpose. Instead, he argues the three-year requirement is not rationally related to the purpose. He asserts it actually discourages migration to the state because the exemption is

---

[5] There was discussion at oral argument of other possible legislative motivations for enacting the three-year residency requirement, including for fiscal purposes and rewarding military service. We need not consider these arguments because the County's stated purpose of encouraging long-term settlement by veterans is legitimate and the three-year waiting period is a reasonable method of accomplishing it. *See Greenwalt,* ¶ 39, 71 P.3d at 730 ("a statutory classification must be upheld if there is *any* reasonably conceivable state of facts that could provide a rational basis for the classification") (emphasis added and citations omitted). *See also, Starns,* 326 F.Supp. at 240 ("We need not, of course, explore all the grounds the defendants advance in justification of the regulation. It is enough that a solid foundation for the regulation can be found in any one of the grounds set forth." (citing *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)).

not immediately available. We do not agree. As we noted earlier, the tax exemption is a gratuity. *Cf. Miller,* 79 Wyo. at 528, 337 P.2d at 271 (recognizing a tax exemption as a gratuity). Thus, the fact a tax exemption exists, regardless of when it becomes available, encourages migration to the state and home ownership. The legislature rationally intended the three-year residency requirement to promote long-term, rather than transient, settlement by providing an incentive to remain in the state. Mr. Martin has not demonstrated beyond a reasonable doubt the durational residency requirement is arbitrary or irrational. He does not show it fails to encourage veterans who have moved to the state to stay so they can qualify for the exemption. While there can be legitimate debate as to the efficacy of a three-year waiting period to obtain a modest tax abatement in promoting long-term veteran settlement, it is not this Court's place to judge the wisdom, fairness, or logic of legislature's choices and line-drawing. *Greenwalt,* ¶ 39, 71 P.3d at 730. The three-year residency requirement is rationally related to the purpose of incentivizing long-term settlement in the state by distinguished veterans.

[¶36] Mr. Martin urges us to follow cases like *Hooper v. Bernalillo Cnty. Assessor,* 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985), and *Zobel v. Williams,* 457 U.S. 55, 56, 102 S.Ct. 2309, 2310-11, 72 L.Ed.2d 672 (1982), to strike down § 39-13-105(a)(vi) on rational basis review. The Supreme Court in *Hooper* considered the constitutionality of a New Mexico statute which provided a tax exemption to Vietnam veterans but only if they had resided in the state before a certain date. *Hooper,* 472 U.S. at 614, 105 S.Ct. at 2864. The court acknowledged the fixed residence requirement in the New Mexico statute was different from durational residency requirements in *Shapiro* and *Maricopa County*, which interfered with the right to interstate travel. *Id.,* 472 U.S. at 616-17, 105 S.Ct. at 2865. Without identifying a specific level of scrutiny, the court held New Mexico could not even justify the classification under the rational basis test. *Id.,* 472 U.S. at 618-23, 105 S.Ct. at 2866-2869.

[¶37] The statute at issue in *Hooper* differed from § 39-13-105(a)(vi). The New Mexico statute created two permanent classes of veteran residents based upon when they arrived in the state. *Id.,* 472 U.S. at 617, 105 S.Ct. at 2865-66. It was not rationally related to the state's objective of encouraging settlement in the state because the eligibility date had long since passed when the law was enacted. *Id.,* 472 U.S. at 619, 105 S.Ct. at 2866-67. "The legislature cannot plausibly encourage veterans to move to the State by passing such retroactive legislation." *Id.* Our statute, by contrast, does not create permanent classes of veterans and provides a means for veterans who move to the state to qualify for the exemption.

[¶38] In *Zobel,* 457 U.S. at 56-60, 102 S.Ct. at 2310-13, the Supreme Court considered the constitutionality of Alaska's statutory scheme which classified residents in permanent groups based upon the length of their residency, calculated back to the year of statehood. Varying amounts of dividends from the state's natural resources income were distributed to residents based upon their classification. *Id.*, 457 U.S. at 56, 102 S.Ct. at 2310-11.

13

Distinguishing *Shapiro,* the court noted the Alaska statutes did not discriminate only against those who had recently exercised their right to interstate travel by migrating to the state. *Id.,* 457 U.S. at 59-60 nn.5-6, 102 S.Ct. at 2312-13 nn.5-6. It also "discriminate[d] among long-time residents and even native-born residents" because they had fewer years of residency. *Id.,* 457 U.S. at 59 n.5, 102 S.Ct. 2312 n.5.

[¶39] The Supreme Court stated it did not need to determine if a heightened level of scrutiny applied because Alaska's statutory scheme could not even pass the rational basis test. *Id.,* 457 U.S. at 61-63, 102 S.Ct. at 2313-14. Relevant here, Alaska argued a differential dividend scheme provided a financial incentive for people to move to Alaska. *Zobel,* 457 U.S. at 61, 102 S.Ct. at 2313. The state's objective was not rationally related to the graduated dividends scheme because it calculated residency for determining the amounts of dividends retroactive to the date of statehood, well before the statutes were enacted. *Id.* The State's interest in promoting settlement was not served by granting greater dividends to persons for their residency during the 21 years between the dates of statehood and enactment of the dividend program. *Id.*

[¶40] Mr. Martin argues a paragraph from *Zobel* specifically supports his position in this case.

> If the states can make the amount of a cash dividend depend on length of residence, what would preclude varying university tuition on a sliding scale based on years of residence [] or even limiting access to finite public facilities, eligibility for student loans, for civil service jobs, or for government contracts by length of domicile? Could states impose different taxes based on length of residence? Alaska's reasoning could open the door to state apportionment of other rights, benefits, and services according to length of residency. It would permit the states to divide citizens into expanding numbers of permanent classes. Such a result would be clearly impermissible.

*Id.,* 457 U.S. at 64, 102 S.Ct. 2314-15.

[¶41] Mr. Martin reads these statements as declaring any durational residency consideration in imposing taxes fails rational basis review. His interpretation is overly broad. The Supreme Court was speaking in the context of the Alaskan dividend scheme which created "permanent" classifications depending on the length of residence and determined the length of residence retroactively to the date of statehood. If a tax system was structured like the dividend scheme in *Zobel,* it would face the same challenge.

14

[¶42] The concerns in *Hooper* and *Zobel* do not exist in this case. The tax incentive in § 39-13-105(a)(vi) is not predicated on residency that existed prior to enactment of the statute. Instead, eligible veterans can qualify for the exemption based upon their present or future residency statuses. Mr. Martin has not convinced us the three-year residency requirement is not rationally related to a legitimate governmental purpose. As such, it does not violate the Fourteenth Amendment.

## CONCLUSION

[¶43] The three-year residency requirement under § 39-13-105(a)(vi) for qualifying for a veteran property tax exemption does not infringe on the fundamental right to travel. Therefore, the rational basis test rather than the strict scrutiny test applies to determine its constitutional validity. The residency requirement does not violate equal protection or the privileges and immunities clause because it is rationally related to the legitimate governmental purpose of encouraging veterans to settle in the state for the long-term.

[¶44] Affirmed.